## CLARK THREAD CO. v. ARMITAGE.

(Circuit Court of Appeals, Second Circuit. May 28, 1896.)

1. TRADE-MARK—INFRINGEMENT—EQUITABLE RELIEF—COMPLAINANT'S MISREPRESENTATIONS.

The firm of J. J. Clark & Co. began manufacturing thread in Scotland early in this century, and continued to do so under that name, and afterwards as Clark & Co., until 1880, when it became a Scotch corporation under the latter name. The firm established a selling agency in this country about 1826, and continued the same until 1866. George A. Clark, a member of the Scotch firm, was their selling agent here from 1854 to 1862, when two of his brothers became his partners, under the firm name of George A. Clark & Bros. This firm continued to be selling agents until 1866, when its members, together with the members of the Scotch firm, incorporated the Clark Thread Company, under the laws of New Jersey. To this company the Scotch firm sold all their stock, good will, and trade-marks pertaining to their business in this country, the firm of George A. Clark & Bros. becoming its selling agent. The corporation built large factories in this country, and has since done a large business here. It uses on its labels and boxes, among other things, the following: "Manufactory established 1812. George A. Clark, Sole Agent." "It has been awarded prize medals at all the great international exhibitions from 1855 to 1878." Held, that by these expressions the corporation was legitimately representing its commercial origin and the beginning of its mercantile history; that in the words "George A. Clark, Sole Agent" (who died in 1873, and never was its sole agent), it was properly using the trade-mark assigned to it by the Scotch firm to indicate that it was the successor of that firm, whose representative in this country was George A. Clark; and that consequently there was no such fraud or misrepresentation as would prevent it from obtaining equitable relief against a fraudulent infringement. 67 Fed. 896, affirmed.

2. SAME.

During the four years preceding the commencement of the suit, the Clark Thread Company sent to its agents 31 dozen boxes, of a dozen spools each, bearing on the box covers the words, "J. & J. Clark & Co., Paisley," being part of one of the trade-marks purchased from the Scotch firm. Defendant contended that this indicated that the thread was made in Paisley, and was a fraudulent misrepresentation. Held, that the amount of these sales was so insignificant as to be of no importance in determining the corporation's right to maintain the suit. 67 Fed. 896, affirmed.

3. SAME—INFRINGEMENT—IMITATION OF LABELS.

The Scotch firm and their American agents, and the New Jersey corporation which succeeded them, had always characterized their thread as

"Clark's" thread, or "Clark's" cotton, in different forms of expression. Their spool cotton bore, on the ends of the spools, circular labels, having on the upper half circle, in heavy gothic type, the word "Clark's," and on the lower half the words "Spool Cotton." Horizontally across the middle were the letters "O. N. T.," standing for "Our New Thread." The letters were in white on a dark background. Defendant's labels had the words "Clark's" and "Spool Cotton" in the same kinds of type and the same positions, and across the middle, also in white on a dark background, were the letters "N–E–W." separated by hyphens. The evidence and exhibits, including the advertising literature sent out by defendants, showed that the purpose of the similarity was to deceive the public into the belief that the article was manufactured by the old and well-known manufacturer, and that "N–E–W" indicated a new kind of the old Clark's spool cotton. The maker of defendant's thread was incorporated as the "William Clark Company." *Held* that, even if this corporate name were properly adopted, defendant should be enjoined from using the words "Clark's," or "Clark's Spool Cotton," or "Clark's Thread," and also the letters "N–E–W." 67 Fed. 896, modified and affirmed.

4. SAME—RIGHT OF THIRD PARTY TO TRADE-MARK.
     *Held*, further, that the fact that another corporation, which had become the successors in this country of another Scotch firm of Clarks, who were competitors of J. & J. Clark & Co., also had the right to use "Clark" in connection with thread which had always been distinguished from complainant's thread by difference in color of labels and the form of words, did not prevent complainant firm from enjoining defendant's fraudulent use of the words. 67 Fed. 896, affirmed.

5. SAME—IMITATIVE CORPORATE NAME—ESTOPPEL.
     Two persons named William Clark, and known, respectively, as William Clark, No. 1, and William Clark, No. 2, were long engaged in the thread business, in connection with the Scotch firm of J. & J. Clark. William Clark, No. 1, was one of the original promoters of the Clark Thread Company, which in 1866 succeeded to the business of the Scotch firm in this country, with the right to use the trade-marks "Clark's Thread," "Clark's Spool Cotton," etc., and was its treasurer and managing director. William Clark, No. 2, was the superintendent of its factory until 1891, when he resigned, and, with his sons, who had also been in the employ of the Clark Thread Company, organized the William Clark Thread Company. William Clark, No. 1, was consulted as to the choice of a name for the new corporation, and either assented to or did not object to the name chosen. *Held*, that his action had enough of an official and binding character to estop his company from objecting to the use by the new company of its corporate name in connection with the thread made by it. 67 Fed. 896, affirmed.

Appeal from the Circuit Court of the United States for the Southern District of New York.

Rowland Cox and Charles B. Meyer, for complainant.
Charles E. Mitchell and H. D. Donnelly, for defendant.

SHIPMAN, Circuit Judge. The Clark Thread Company, a New Jersey corporation, brought its bill in equity, before the circuit court of the United States for the Southern district of New York, against Herbert G. Armitage, an alien, who was duly served with process, appeared, and defended upon the merits. The bill was brought for the purpose of enjoining the defendant against the improper use of the complainant's trade-marks, and against the un-

fairness of his competition in trade. From the decree of the circuit court against the defendant, each party has appealed.

One of the defenses, which the defendant apparently regards as of value, relates to alleged historical misstatements by the complainant upon its labels, and it therefore becomes important to give the commercial genealogy of the complainant corporation somewhat in detail. Except for the consideration of this defense, the history could have commenced with the organization of the corporation.

The manufacture of cotton thread has long been prosecuted in Scotland by the members of a family by the name of Clark, and in the early part of this century was carried on at Paisley by two brothers, John and James Clark, sons of James Clark, who was the earliest Clark in the business, under the name of J. & J Clark, or J. & J. Clark & Co. This firm, continuously composed of the sons and relatives of John and James Clark, and also known for some years prior to 1866 as Clark & Co., finally became, in 1880, a Scotch corporation under that name, still manufactures thread in Paisley, and is largely a family concern. About the year 1826, the firm of J. & J. Clark & Co. established an agency in New York for the sale of its thread in the United States, which agency continued until 1866. George A. Clark, a member of J. & J. Clark & Co. was their sole selling agent in this country from 1854 to 1862, when his brothers, William and Alexander, became his partners under the name of George A. Clark & Bros. This firm continued to be selling agents of the Scotch manufacturers until 1866, as hereinafter stated, when J. & J. Clark & Co. sold all their stock and the good will and trademarks pertaining to their business in this country to the complainant, the Clark Thread Company. The principal incorporators of this company were the members of J. & J. Clark & Co. and George A. Clark & Bros. This last-named firm became the sole selling agent of the new corporation, and so continued until 1869, when, in consequence of the death of Alexander Clark, the firm name was changed to George A. Clark & Bro., who are still the complainant's sole selling agents. In 1851 George A. Clark and his brother-in-law, Peter Kerr, who were also members of J. & J. Clark & Co. after the year 1854, began the manufacture of thread in Paisley under the name of Kerr & Clark. George A. Clark was also the sole agent for Kerr & Clark's thread in this country until 1865. At some time between 1857 and 1865 it was agreed between J. & J. Clark & Co. and Kerr & Clark that the former should take the entire English and colonial business, and that the latter should take the business in the United States. In 1865 the firm permanently united or "amalgamated" with J. & J. Clark & Co., and was so united when the sale of the business in this country to the complainant took place. Other members of the Clark family, in like manner, from time to time, started in the same manufacture, as separate firms, but after a while became absorbed in the original J. & J. Clark or in the complainant. J. & R. Clark & Co. commenced to manufacture in Scotland in 1859, and sold their thread

there and in the United States until 1869, when they sold their mills, stock, and business to J. & J. Clark & Co. J. Clark & Co., of Paisley, were also in existence for a few years, were bought out by the complainant, and ceased to exist. The firm of John Clark, Jr., & Co. whose members were of the same Clark family, is an exception to this rule of absorption. It was established at Glasgow in the early part of the present century, soon began to sell its thread in the United States, and in 1882 sold all its Scottish property and business to Clark & Co., but reserved the good will of its business in this country and transferred it to the Clark Mile End Spool Cotton Company, which built a factory in New Jersey, and still exists, largely engaged in the manufacture and sale of thread. The complainant and the Mile End Company are thus the only two manufacturing successors in this country of the original Scotch family of Clarks, who had acquired a very high and widely-known reputation as thread manufacturers. The complainant has built large factories in and near Newark, does an immense business in this country, and has fully maintained the reputation and character of its predecessors. At first, J. & J. Clark & Co. manufactured in the gray the thread, which was sent to this country and finished by the complainant, but of late years the entire manufacture has been carried on by the complainant. William Clark, who is known in the case as William Clark, No. 1, was a grandson of the original James Clark, became a member of the firm of George A. Clark & Bros. in 1862, was one of the original promoters of the complainant, in 1873 succeeded his brother George as its treasurer and managing director, is a member of Clark & Co., and upon the death of his brother Alexander became the sole resident partner in this country of George A. Clark & Bro., and is very well known in connection with the complainant's business. William Clark, No. 2, was born in 1819, entered the employment of J. & J. Clark in Paisley when he was 12 years old, continued with them for 5 years, was a manager of Kerr & Clark's factory from 1851 to 1864, when he came to this country, superintended in 1866 the construction of the complainant's factory, and continued in its employment as a superintendent until 1891, having a high reputation as a thread maker, and, during the latter part of his term of service, receiving a salary of $12,000 per annum. During a portion of this time he was a director in the company. In the spring of 1891 he resigned, and with his two sons, who had also been in the complainant's employment, organized the William Clark Company, built a thread mill near Westerly, R. I., employed the defendant as its chief selling agent, who forthwith entered extensively, by circulars, advertisements, and the use of varied means, into active competition with the complainant. A portion of these means was the use of words and a style of label, upon the spools of cotton which he sold, with which the public had long been familiar, as the language and style which characterized the complainant's goods.

As a first defense, the defendant says that the complainant has itself been guilty of misrepresentation, in the labels upon its boxes

and otherwise, which ought to prevent it from receiving the help of a court of equity. It is said, and said truly, that the top label upon the spool contains the words "George A. Clark, Sole Agent"; that the label upon the top of the boxes has the words "Manufactory established 1812, George A. Clark, Sole Agent"; that the label inside the boxes has the words "Established 1812, George A. Clark, Sole Agent," and "It has been awarded prize medals at all the great international expositions from 1855 to 1878,"—whereas, the factory of the complainant was not built until 1866, and George A. Clark, alone, was never its sole agent. It is urged that the complainant is representing that its factory was built in 1812, when there was hardly a manufacturing corporation in this country, certainly not one for the manufacture of thread, and hardly a structure which would now be dignified with the name of manufactory. The complainant was, in fact, representing its commercial origin, and the beginning of its mercantile history, and when it bore upon its label the words "George A. Clark, Sole Agent," who died in 1873 and never was its sole agent, it used, as it lawfully might, the trade-mark which was assigned to it by J. & J. Clark & Co. and which it still used to designate the fact that it was the successor in business of the old firm, whose representative in this country was George A. Clark.

The principle which is applicable to this part of the subject, and some of the authorities by which it is supported, are stated in Le Page Co. v. Russia Cement Co., 2 C. C. A. 555, 51 Fed. 943, in which the court of appeals for the First circuit, speaking by Judge Putnam, said:

"It is also in accordance with the principles of law, and with justice to the community, that any trade-mark, including a surname, may be sold with the business or the establishment to which it is incident; because, while it may be that individual efforts give them their value at the outset, yet afterwards this is ordinarily made permanent, as a part of the entire organization, or as appurtenant to the locality in which the business is established, and thenceforward depends less on the individual efforts of the originator than on the combined result of all which he created."

Two other particulars are alleged to indicate fraud upon the part of the complainant. One is that the black and gold labels upon spools of thread of the numbers above 100, which designate the thread of very small sizes, represent that the thread upon those spools is made of six cord, whereas, it is made of three cord. The other is that the complainant has sold thread upon black wooden spools, bearing the name of "J. & J. Clark & Co., Paisley" on the box cover, which, it is said, indicated that the thread was made in Paisley. One of the trade-marks which was assigned to the complainant in 1866 was "J. & J. Clark's Paisley Six Cord, 200 Yards. George A. Clark, Sole Agent, New York." The first charge is not true. The second, if originally of importance, was true, prior to the commencement of this suit, to such an insignificant extent as to be a matter of no consequence in this case. Whether any of such spools were in the stock of the complainant, or its agent, at the commencement of this suit, cannot be known with perfect accuracy.

For the four years prior to September, 1894, the complainant sent to its agent only 31 dozen boxes of a dozen spools each, which bore this label:

Turning, now, to the complainant's case, the thread made by J. & J. Clark & Co. and sold by George A. Clark, was popularly known as "Clark's thread," or "Clark's Spool Cotton," and the trade-marks, devices, and labels, which they used and sold to the complainant, characterized their thread as "Clark's" thread or cotton, in different forms of expression, but preserving the word "Clark's." The exclusive title to the use of the word "Clark's," or "Clark's Spool Cotton," will be hereafter considered.

The spools of the manufacturers of spool cotton bear circular labels upon the ends of the spools. The two labels which were adopted by the complainant when it commenced business, and have ever since been used, and which have become identified in the minds of the public with their thread, are here shown.

A              B

      

Label A was one of those used by J. & J. Clark & Co., and which were sold in 1866. Label B was adopted by the complainant in 1866. The letters "O. N. T." had not previously been used on a label. The words "Our New Thread" had been used, and are mentioned in the assignment of 1866. They seem to have been first used by Kerr & Clark in 1858, and were applied to a six-cord thread, especially for sewing machines, but the letters "O. N. T." have not been associated in the minds of the public with their early history.

The spool labels which the defendant devised and caused to be used are as follows:

F              G

      

A black and gold label is used by all spool cotton manufacturers, and the use of label F will not be hereafter considered, except in connection with the use of the corporate name of the William Clark Company. In regard to labels B and G, it appears in the language of the circuit judge, that "the name 'Clark's' appears on each, printed in the same heavy gothic type, and occupies identically the same position in the upper half of the circle." The same is true of the words "Spool Cotton" in the lower half. Horizontally across the middle of the complainant's label are the letters "O. N. T.," separated by periods. They are white letters on a dark background. Horizontally across the middle of the defendant's label are the letters "N-E-W," separated by hyphens. They are white letters on a dark background.

A similarity of labels is manifest, and, when it is known that label B had been used by a thread-manufacturing corporation for about 25 years before it was adopted by the new corporation; that the business of the old manufacturer had become immense; that the language of the label had become, by daily observation in a part of the households of this country, a familiar trade-name of the article which the complainant made; that the label represented to the minds of customers the thread which they preferred; and that the new corporation had not acquired a reputation and had been in existence but a few months,—the bare inspection of the two labels would lead a court to suppose that the similarity had been adopted for a purpose which was not an honest one. The record shows that the object of the similarity was to deceive the public into the belief that the article was the work of the old and well-known manufacturer, the excellence of whose product has been recognized by daily use, and thus to decoy the public into the purchase of the unknown product of a new maker.

The defendant asserts that this conclusion takes no cognizance of the existence of the letters "O. N. T." upon the label, which he considers to be the complainant's distinctive designation of its thread, and of the substitution of the letters "N-E-W." It is true that, as between the two Clark threads, the complainant's and the Mile End, the letters "O. N. T." differentiate the one from the other in the minds of the jobber and the retail merchant; but the ordinary retail customer is most familiar with the term "Clark's Cotton," or "Clark's Spool Cotton." It is obvious that the new letters have the same relative situation upon the defendant's label that "O. N. T." had, and that they present themselves to the eye of the purchaser in like dress and with the same surroundings. If any other letters had been selected, there would have been only a plausible variation from the old label; but the use of the new letters had a larger purpose than that of a mere departure from the complainant's label. The exhibits in the case make it manifest that the defendant has been ingenious and persistent, by advertisements, circulars, cards, and devices of various sorts, to represent that the thread which he was selling was "Clark's New Spool Cotton"; that is to say, a new thread by the old manufacturer,

and for that purpose the letters "N-E-W" have been constantly presented.    They were not arbitrarily selected, and were not selected merely to create a difference from the old label, but they had a meaning and an object, which are shown everywhere in the literature which has been profusely issued by the defendant; the intent being to make the letters present to the mind the idea of the word "New," and that the advertised thread is a new kind of the old-fashioned "Clark's Spool Cotton."    The use which is attempted to be made of these letters has an important bearing upon the question of unfairness of competition.

In reply, the defendant makes two points:

1. Inasmuch as the new corporation was entitled to use the corporate name, the defendant had a right to advertise and sell its thread as and for "Clark's Spool Cotton" and "Clark's Thread." Assuming that the corporate name was not improper, the fallacy of the defendant consists in the assertion that, when he called the goods "Clark's Spool Cotton," he was simply telling the truth.    On the contrary, he was attempting to make the public believe that the goods belonged to another Clark, and there is evidence that the attempt was partially successful.

2. That the complainant's right to use the words "Clark's Spool Cotton" is not exclusive, and that the words did not point solely to its product.    It is true that John Clark, Jr., & Co. of Glasgow, an early competitor of J. & J. Clark & Co., began to sell their own thread in New York in 1820, and that the Mile End Company is their successor in this country, which uses and has a right to use upon its labels "John Clark, Jr., & Co.," and "Clark's Mile End Spool Cotton," and has a right to call its product "Clark's Thread." Its thread is distinctively recognized in the trade by the words "Mile End" and by its black spools, but its history shows that it has a rightful claim to the use of the word "Clark." It does not follow, however, because the complainant is not exclusively entitled to use the words "Clark's Spool Cotton," that therefore it cannot rightfully enjoin a person who is fraudulently making use of its label.    The litigation in regard to the Rogers trade-mark, which has been abundant in the courts of Connecticut, and which has also appeared in the courts of Massachusetts and New York, showed that three distinct corporations were entitled to use the name "Rogers" upon their goods, but it was never supposed by a court that either injured owner had not a right to suppress the use of the trade-name by a fraudulent competitor, or that it was an adequate defense that there were other owners whose use was not fraudulent.

It follows that the appeal of the defendant, whose defense has been assumed and maintained by the William Clark Company, cannot be sustained.

The circuit court found that the acts of the defendant were a fraudulent invasion of the good will of the complainant, and an unfair and inequitable competition, and enjoined the defendant against the use by labels, circulars, publication, or by word of mouth,

of the designation "Clark's" as the name or part of the name of the thread manufactured by the William Clark Company, and from selling thread manufactured by said company under the name of "Clark's" or "Clark's Spool Cotton" or "Clark's Thread," but did not restrain the use of the letters "N-E-W," or the use of the corporate name of the William Clark Company, on labels or otherwise, provided that the word "Clark" was not printed so as to be a practical violation of the rest of the injunction. In each of these omissions, the complainant insists that the court erred.

The first question is in regard to the use of the corporate name. The corporators first selected as its name the William Clark Thread Company, and upon the objection of William Clark, No. 1, and at his suggestion of the new name, the name was altered to the William Clark Company. He does not recollect giving an assent to the new name, but remembers that there was an interview and an objection to the name originally selected. If there had been no assent, the selection of the name, the William Clark Company, would have been both unnecessary and improper. The new company was to be a thread company, and was started as a competitor of the Clark Thread Company, of which William Clark, No. 1, had been the treasurer and managing director, and the representative man, in this country, since 1873. The name was adopted, not merely to obtain the benefit of the reputation of William Clark, No. 2, but to gain the enlarged reputation which had belonged to Clark's thread for a great many years. R. W. Rogers Co. v. William Rogers Manuf'g Co., 17 C. C. A. 576, 70 Fed. 1017; Holmes, Booth & Haydens v. Holmes, Booth & Atwood Manuf'g Co., 37 Conn. 278. It is not probable that William Clark, the treasurer, understood the capabilities of the name William Clark Company, and the uses which could be made of it. But he did assent—or, at least, not object—to it, when its adoption was under discussion in a formal interview with him as the representative of the complainant, and his action had enough of an official and binding character to prevent his company from successfully objecting to the mere use of the corporate name. For the reasons that have been heretofore given, the use by the defendant of the letters "N-E-W" upon label G, and other labels, pictures, cards, circulars, and advertisements of a similar character, should have been enjoined.

The decree of the circuit court in favor of the complainant, so far as the decree was rendered, is sustained, but the cause is remanded to that court with instructions to enter a decree, with costs of this court, which shall also enjoin against the use of the letters "N-E-W," in accordance with this opinion.