**TIME, Inc., v. VIOBIN CORPORATION.**
No. 188.

District Court, E. D. Illinois.
Aug. 27, 1941.

Acton, Acton, Baldwin & Bookwalter, of Danville, Ill., for plaintiff.

Busch & Harrington, of Champaign, Ill., for defendant.

LINDLEY, District Judge.

Plaintiff, publisher of "Life" magazine, seeks to enjoin infringement of its registered trade-marks and unfair trade practices alleged to have been committed by defendant and to be of such character as to create in the minds of the purchasing public a belief that plaintiff is sponsoring defendant's product.

Plaintiff has registered under the federal act the word "Life." It places on the outer cover of the magazine in the upper left-hand corner the name "Life" in white letters on a red background and at the bottom a red stripe. Defendant manufactures a cereal food, which it sells in tin cans marked "Life of Wheat." Originally its label was almost entirely red and white. The word "Life" appears above the words "of wheat," in larger letters, in white, on a red background but in slanting letters rather than in the perpendicular form shown in plaintiff's registrations. Following complaint by plaintiff, defendant modified its label by inserting in place of certain white coloring yellow portions, including a yellow head of wheat. This is the label of which plaintiff now complains.

For many years plaintiff and its predecessor have published the magazine "Life" under the registered trade-marks. It has expended large sums of money in advertising the publication and building up its good will, having now a weekly circulation of 2,750,000 copies. The public generally has come to recognize and know the word "Life" as indicating plaintiff's magazine. Plaintiff claims that, by virtue of these facts, it has acquired the exclusive right to use and protect the word "Life"

and that the acts of defendant are such as to induce the public reasonably to believe plaintiff is endorsing or is responsible for defendant's product.

Defendant takes from the wheat grain the germ from which reproduction can be had, removing all the outer part, including bran and the endo sperm. It says entirely reasonably, therefore, that the germ so utilized is the life of the wheat. It so treats the product as to prevent its becoming rancid and in the label accentuates the content of Vitamins G and B. It disclaims any intent to capitalize upon plaintiff's mark or good will and insists that while plaintiff's mark is wholly fanciful, defendant's phrase is true and representative of the actual facts.

Early in the history of the controversy plaintiff wrote to defendant saying that its good will and reputation in connection with the mark and format had been built up by substantial expenditures and efforts; that as a result the public had come to know and identify the mark with its magazine and that defendant should not benefit therefrom. To this defendant replied saying that plaintiff was "absolutely right in its contention" and that defendant had no desire under any circumstances to use or benefit from the good will plaintiff had built up. Plaintiff insists that this was an admission of infringement, but defendant explains its reply by saying that what it meant to admit was that it should not profit from the good will and publicity of plaintiff but that, as the letter itself said, "It should be pointed out, however, that the term 'Life of Wheat' is·no figure of speech. The germ of the grain is the life of the wheat. The term 'Life of Wheat' has been used in various types of advertising to denote, for example, the restoration of the wheat germ (Life of Wheat)." Though defendant's language was somewhat misleading we think defendant's contention as to the sense and intent of the entire letter entirely reasonable. I can not attribute to defendant's letter any quality of admission of wrongdoing or intent.

The claim for infringement of trademark arises under the common law. The federal statute provides for registration and protection but does not attempt to define a valid mark. It specifies what marks shall be registered and, in so doing, adheres rather closely to what the common law recognizes as constituting a valid mark. The federal courts, in their determination

of what constitutes a good trade-mark, have been guided largely by the limitations of the act. Title 15 U.S.C.A. § 85 provides for registration of trade-marks, barring any mark identical with a registered or known trade-mark owned and in use by another and "appropriated to merchandise of the same descriptive properties" and any mark which so nearly resembles a registered or known trade-mark owned and used by another and "appropriated to merchandise of the same descriptive properties as to be likely to cause confusion or mistake in the mind of the public or to deceive purchasers." Section 96 provides that a person shall be liable for damages at the suit of the owner of a registered trade-mark if, without the consent of the owner, he reproduces or copies a registered trade-mark and affixes the same to labels of merchandise "of substantially the same descriptive properties as those set forth in the registration."

■ In accord with this legislative word from Congress and under the applicable rules of the common law, the courts quite generally refuse to enjoin alleged infringement of a registered trade-mark or to allow damages therefor if the merchandise of the alleged infringer is not of the same descriptive qualities. It is not necessary that the goods to which alleged infringing labels are attached shall be of the same species but they must be of the same class. If they are lacking in similarity of class or descriptive properties, the courts conclude that there is no invasion of plaintiff's rights. Layton Pure Food Co. v. Church & D. Co., 8 Cir., 182 F. 35, 32 L.R.A.,N.S., 274; Simplex Automobile Co. v. Kahnweiler, 162 App.Div. 480, 147 N.Y.S. 617; Certain-Teed Products Corp. v. Philadelphia & S. M. G. Co., 3 Cir., 49 F.2d 114; National Cash Register Co. v. National Paper Products Co., 54 App.D.C. 278, 297 F. 351; Three in One Oil Co. v. Lobl Mfg. Co., 57 App.D.C. 356, 23 F.2d 893; Three in One Oil Co. v. Boston Brass Co., 57 App.D.C. 358, 23 F.2d 895; Pabst Brew. Co. v. Decatur Brew. Co., 7 Cir., 284 F. 110; American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317.

■ The confusion in the decisions results not so much in various statements of the rule as in its application to the specific facts involved in each cause. Here, the goods are not of the same descriptive qualities. They are not of the same class.

One is a magazine; the other, a cereal food. The two possess in common, no identity or similarity of function or of descriptive quality or property; they are not to be found in the same or analogous markets; they occupy fields of industry and commerce far removed from each other. I conclude, therefore, that there is no infringement of the trade-mark.

■■ The plaintiff relies also upon its common law right to complain of unfair competition, of which infringement of trade-marks constitutes only a limited portion. "There is no property in a trade-mark apart from the business or trade in connection with which it is employed. United Drug Co. v. Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Hanover Milling Co. v. Metcalf, 240 U.S. 403, 413, 414, 36 S.Ct. 357, 360 (60 L.Ed. 713). 'The law of trade-marks is but a part of the broader law of unfair competition' (Id.), the general purpose of which is to prevent one person from passing off his goods or his business as the goods or business of another. * * * To some extent the two terms [trade-mark and trade-name] overlap, but there is a difference, more or less definitely recognized, which is that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its good will." American Steel Foundries v. Robertson, Commissioner, 269 U.S. 372, 373, at 380, 46 S.Ct. 160, at 162, 70 L.Ed. 317.

Plaintiff insists that it owns and is entitled to monopolize the trade-name "Life" in connection with a particular format well known to the public. Its contention is that any member of the public who, through plaintiff's extensive expenditure of money, has been trained to associate the name, with its peculiar color arrangement and format, with plaintiff, would, upon seeing defendant's product, employing in its label the name "Life of Wheat," with format and color combination, similar to plaintiff's, conclude that plaintiff was "in some manner sponsoring or approving defendant's product or affiliated in some manner with its manufacture or distribution." Thus, it insists that, even though the goods be wholly dissimilar, the acts of defendant constitute unfair trading practice in that they necessarily inspire in the minds of the purchasing public the erroneous and false implication that plaintiff in some manner is responsible for, sponsoring, approving or endorsing defendant's product.

This, it says, is unfair competition which should be enjoined.

■ Though the courts have given heed to similarity and identity of class and properties of controlling weight in cases of strict trade-mark infringement, they have evinced, in recent years, in cases of unfair competition, a liberal tendency to recognize that a manufacturer may have a sufficient economic interest in the use of his trade-name outside the field of his own exploitation to justify interposition by a court. One's trade-name is his authentic seal. By its use he supports the goods which bear it. It implies endorsement and carries his name for good or evil and, when another uses it, he cannot control the uses to which it is put. As Judge Hand said in Yale Corp. v. Robertson, 2 Cir., 26 F.2d 972, 974, such use "is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask." But the Supreme Court has not definitely pointed out the limits to which such doctrine may properly be extended. Thus, in Beech-Nut Co. v. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 482, 71 L.Ed. 810, Mr. Justice Holmes expressly refrained from such an adjudication, as it was not necessary in the cause before the court, saying: "It may be true that in a case like the plaintiff's its rights would not be sufficiently protected by an injunction against using the marks upon goods of the same class as those to which the plaintiff now applies it and to which its registration is confined. Upon that we express no opinion." Consequently, our instruction in precedents must be found in the opinions of the lesser courts.

■■ It has been said that "unless the borrower's use is so foreign to the owner's as to insure against any identification of the two, it is unlawful," Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974, that one is protected not only as to articles to which he has affixed his trade-name but also "upon such other goods as might naturally be supposed to come from him"; Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273, and, in this circuit, that, if the names are identical or closely similar, if the labeled merchandise is such "as reasonably may be attributed to plaintiffs, deceit results." California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 118 F.2d 149, 152.

■ It would seem, therefore, that these expressions indicate the tests to be applied: Is defendant's use so foreign to plaintiff as to assure against any identification of the two or confusion between them? Are the goods such as might naturally be supposed to come from plaintiff? Are the goods such as reasonably may be attributed to plaintiff? I have already noted that plaintiff's trade-name is applied to a magazine of wide circulation perhaps as well known to the American public as any publication. Plaintiff does not insist that it manufactures or sells any merchandise or that it contemplates doing so. Its insistence is that when defendant places upon its food product in tin cans the words "Life of Wheat" the public, knowing the magazine "Life" as plaintiff's, will naturally and reasonably assume that plaintiff is sponsoring, endorsing or in some other way responsible for the food. Plaintiff's product consists of the stabilized wheat germ. The label recites that it is rich in Vitamins B and G, containing protein and minerals such as iron and phosphorus. To me it is beyond possibility that one purchasing cereal food labeled Life of Wheat will logically or reasonably deduce from such a label that plaintiff is responsible for the goods. There is no such relationship between the two articles as, by any remote contingency, could cause to rise in the mind of a purchaser, naturally, a belief that plaintiff is in any wise responsible for defendant's cereal food. As said in Waterman Company v. Gordon, 2 Cir., 72 F.2d 272, 273: "There is indeed a limit; the goods on which the supposed infringer puts the mark may be too remote from any that the owner would be likely to make or sell. It would be hard, for example, for the seller of a steam shovel to find ground for complaint in the use of his trade-mark on a lipstick." So here the evidence submitted indicates no possibility of anybody's belief that plaintiff is sponsoring defendant's product, no confusion and no deceit.

Plaintiff cites certain decisions as supporting its position. In Esquire, Inc. v. Esquire Bar, D.C., 37 F.Supp. 875, defendant, in advertising its liquor bar, copied the exact name, symbols and insignia which the public had come to identify with the magazine. From the actual identity and the specific facts involved the court found that the public might reasonably believe that plaintiff was sponsoring in some way the liquor business of defendant. In Great

Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C., 20 F.Supp. 703, the nationally known chain-store grocery company obtained an injunction against defendant from using the trade name A. & P. in connection with radios, washing machines and electric refrigerators, all household goods. There defendants employed the identical trade-mark of plaintiff and adopted the slogan of plaintiff changing only the title of the merchandise to "radio." They asserted that the A. & P. reputation deserved patronage. The court found from the specific facts that it was the intent of defendant to appropriate the good will of plaintiff and deceive the public. In Alfred Dunhill of London, Inc. v. Dunhill Shirt Shop, Inc., D.C., 3 F.Supp. 487, defendant admitted in an affidavit that he had selected the name "Dunhill" because it was associated with the English people and their reputation for turning out well dressed men and applied it to shirts. The court found that in view of the fact that both the pipe of plaintiff and defendant's product are used by men and there was an exact copy of the trade name, defendant was guilty of unfair trade practice. Similar was the result in Wall v. Rolls-Royce of America, 3 Cir., 4 F.2d 333, where the plaintiff was a manufacturer of automobiles and defendant sold radio tubes by mail. The tubes were labeled "Rolls-Royce." The court said that no one purchasing a radio would believe he was buying an automobile or an aeroplane, but that, inasmuch as electricity is a vital element in each and plaintiff had built up a reputation in that line, it would naturally come to the mind of the purchaser of a radio tube so labeled that Rolls-Royce had branched out into the radio field. Both products, in one sense of the word, were of the same class. In Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509, plaintiff used the name "Vogue" in advertising its magazine and on the magazine itself, which had become an authority on styles for women, advertising millinery as well as other parts of women's clothing. The court enjoined the millinery company from using the name "Vogue" on hats. The name was the same and the products of defendant were of the same class as those advertised by plaintiff. In Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, plaintiff manufactured fountain pens and supplies under the name "Waterman." Defendant sold razor blades under the name "Waterman." The court believed that the goods, frequently sold in the same stores, were not so dissimilar in their association in the minds of the public as to prevent confusion. In Time, Inc. v. Barshay, D.C., 27 F.Supp. 870, plaintiff magazine, producer of the "The March of Time" news reel, obtained an injunction against the use of the name "The Voice of Time" in connection with phonograph records of speeches made by prominent persons. The court held that the trade-mark "Time" was not infringed but that because of the use of sound in "The March of Time" motion pictures and on the radio and because plaintiff's announcements featured the same voice and as the person who made the announcements on the screen and on the radio was known as "The Voice of Time" there was close association of the elements in use and likelihood that the public would naturally assume some connection between the companies and believe plaintiff the sponsor of defendant's records.

I have mentioned the cases relied upon by plaintiff in order that it may be obvious that the facts here do not come within the decisions in any one of them. As previously pointed out we have no identity of trade name. Defendant's product is far removed from that of plaintiff. It is not in the same class, possesses none of the same functions. In addition, under the facts presented, it seems to me obvious also that there is no logical basis upon which it can be said that any member of the public could reasonably infer that cereal food in tin cans labeled "Life of Wheat" is in any way sponsored by plaintiff.

The application for temporary injunction is denied.

The findings and conclusions herein are hereby made a part of my findings of fact and conclusions of law by way of reference.