**HORLICK'S MALTED MILK CORPORA-
TION v. HORLICK.**

No. 8450.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1944.

MINTON, Circuit Judge, dissenting.

Edward S. Rogers, William T. Woodson, and James H. Rogers, all of Chicago, Ill., and Bert Vandervelde, of Milwaukee, Wis., for appellant.

Clarence J. Ruddy and Sam Alschuler, both of Aurora, Ill., for appellee.

Before KERNER and MINTON, Circuit Judges, and LINDLEY, District Judge.

KERNER, Circuit Judge.

Plaintiff, Horlick's Malted Milk Corporation, appeals from a decree which found that defendant, Charles Horlick, had not infringed plaintiff's registered trade-mark and which granted insufficient relief against defendant's unfair competition.

Plaintiff's advertising has made the name "Horlick's" well and favorably known throughout the United States, and it is usually associated in the public mind with malted milk. In 1915 plaintiff first registered "Horlick's," the word appearing in outlined block letters printed in an arc, for "prepared milk products, food products containing extract of malt, barley and wheat flour and dry extract of malt," and has since renewed it. In 1940, defendant registered the word "Horlick" in solid block letters printed in a straight line, as a trade-mark for "dog, cat, horse, and cattle foods," and also "Horlick of Horlicksville" for the same.

Horlick is defendant's family name, and also the family name of the founder of plaintiff's business. Both defendant and his ancestors resided at Horlicksville, located in Racine County a short distance beyond the present city limits of Racine; and plaintiff has for many years abbreviated its name and address to "Horlick—Racine, U.S.A."

Defendant placed on the market a product in pellet form called "Horlick Dog Food." The package was about 7½" high by 6" wide and had a depth of less than 2". The word "Horlick," printed in a straight line in red block letters 1½" high, outlined in black, appeared prominently on both the front and reverse sides of the package. A drawing of a dog appeared thereunder, which drawing was 3½" in height. Underneath the dog's head appeared the words, "Dog Food," on separate lines in letters 1" high. At the very bottom appeared the line, "Manufactured by Horlick of Horlicksville, Racine, Wisconsin," none of the letters of which exceed ⅛" in height. On the top and bottom flaps of the package, the word "Horlick" appeared in red block letters of the same size and style as on the front and reverse sides of the package.

Plaintiff sells its malted milk in packages and bottles of different sizes and shapes. Its package most nearly the size of defendant's package is 9" in height, each of the four sides of which are 6" in width. On the front and reverse sides, printed in an arc in white letters on a dark blue background, appear: Horlick's (1" block letters), The Original (small red letters), Malted Milk (½" block letters), and a drawing of three cows is immediately below. "The Great American Food Drink for All Ages" is printed in blue letters on the next two lines. At the bottom the words, "Manufactured by Horlick's Malted Milk Corporation, Racine, Wisconsin," are printed over the word "Horlick's" appearing in red script in a slanting line.

There was no direct competition between defendant's business and plaintiff's business, and no one purchased Horlick Dog Food believing that it was malted milk or

food for human consumption. The only similarity between plaintiff's and defendant's packages was the name "Horlick's" and "Horlick," the printing of which was even in a different style, size and color. In spite of this, purchasers familiar with Horlick's Malted Milk, upon seeing the defendant's package, concluded that defendant's dog food was manufactured and sold by the plaintiff. Many witnesses testified that they thought defendant's product was made by the plaintiff. (For a slightly more detailed statement of the facts, see 50 F. Supp. 417.)

Because he found that the two things principally contributing to this reaction were the uncommon name "Horlick" known widely in connection with malted milk and the phrase "Horlick of Horlicksville, Racine, Wisconsin," the District Court entered a permanent injunction restraining the defendant from:

(a) Using the name "Horlick" on his packages or in any manner in connection with the manufacture and sale of dog food without using in association therewith some other word or words which shall distinguish his product from plaintiff's product, which word or words shall be printed in type of [at] least one-half the size of the type used in printing the name "Horlick."

(b) Using the phrase "Manufactured by Horlick of Horlicksville, Racine, Wisconsin," without using in connection therewith the initials, word or words as set forth in (a) above.

Feeling that the District Court did not grant it the full relief to which it is entitled, plaintiff appeals from that portion of the decree permitting defendant (1) to use the name "Horlick" as a brand-name or designation for his product, and (2) to use in connection with the name "Horlick" in indicating the manufacturer some distinguishing word or words displayed in type only half the size of the name "Horlick."

It is plaintiff's contention that defendant should be required to label his product "XYZ Dog Food," and to state thereon "Manufactured by Charles Horlick, Racine, Wisconsin."

Plaintiff contends that if the name "Charles Horlick" is used, defendant will infringe plaintiff's registered trade-mark, "Horlick's." The trade-mark statute, 15 U.S.C.A. § 96, prohibits another person from affixing a colorably imitative trademark to " * * * merchandise of substan-

tially the same descriptive properties * * *." The District Court concluded that malted milk powder intended for human consumption and pellets intended for dog food were not merchandise of the same descriptive properties.

Plaintiff makes two arguments for its view that the products here in question are of substantially the same descriptive properties. The first argument is that the products are both animal foods since man is an animal, and since they are both species of the same genus or class, they must necessarily be within the terms of the statute. Thus, quoting from plaintiff's brief, "If Horlick's suggests milk or malted milk, well, dogs eat or drink milk when they can get it, and puppies certainly do." Plaintiff points further to the letters which it has received from the public reporting the satisfactory results from feeding Horlick's Malted Milk to their dogs, cats, and other animals. Moreover, Horlick's Malted Milk contains malt and milk and Horlick Dog Food contains malt flour and dried skim milk. Notwithstanding these points of similarity, there is a clear, rational, and obvious distinction between the two products which leads us to conclude that they are not different species of the same class, but rather two different classes. The mere fact that they contain common ingredients does not make them of the same class. The evidence shows that the products of the two parties appeal to entirely different markets. Plaintiff's products are advertised exclusively for human beings, while defendant makes a food exclusively for dogs. The Commissioner of Patents, upon hearing an appeal from the Examiner of Interferences, involving the opposition of the manufacturer of "Hexite" used on dog, poultry and other animal foods to the registration of the word "Hexies" for use on crackers for human consumption, concluded that they were not goods of the same descriptive properties. Kellogg Company v. Bremner Bros., 515 Official Gazette of the United States Patent Office 837, 45 U. S. P. Q. 446. Based on physical properties, then, the goods are not of the same class, so as to be within the terms of the statute. Cf. Time, Inc. v. Viobin Corp., D.C., 40 F.Supp. 249, 250, 251, affirmed 7 Cir. 128 F.2d 860.

Plaintiff's second argument is that there is statutory infringement because defendant's use of "Horlick" indicates that plaintiff makes it, and the goods are, there-

fore, of the same descriptive properties. In other words, plaintiff argues that the statute should be interpreted to mean that the goods are of the same descriptive properties whenever a common mark suggests a common origin. It would unduly prolong this opinion to discuss the cases adhering to this view, and would serve no useful purpose inasmuch as this court gave thorough consideration to substantially the same question in Philco Corporation v. Phillips Mfg. Co., 7 Cir., 133 F.2d 663, 148 A.L.R. 125. We concluded there that by enacting § 16 of the Trade-Mark Act, 15 U.S.C.A. § 96, Congress intended federal courts to enjoin the use of a similar trade-mark only on goods which competed fairly directly with the plaintiff's goods. Here, plaintiff's malted milk for humans is not similar enough to defendant's dog food to bring this case within the statute, for the products are too far from being directly competitive. Cf. Beech-Nut Packing Co. v. P. Lorillard Co., 3 Cir., 7 F.2d 967. The outer limit of protection was reached in California Fruit Growers Exchange v. Windsor Beverages, 7 Cir., 118 F.2d 149, and monopoly arising from trade-mark will not be pushed farther into the realm of non-competing products in this circuit.

The further and conclusive answer to this argument is, that when defendant's packages and labels have been amended in conformance with the District Court's decree, with the modifications hereinafter suggested, the source of defendant's product will be so clear that anyone who still would be confused would be careless to a degree that the law has no duty to protect. Quaker Oats Co. v. General Mills, Inc., 7 Cir., 134 F.2d 429. Much of the force of plaintiff's argument is vitiated by the fact that it argues from a false premise, i. e., it assumes that defendant may label his packages "Horlick," when in truth and in fact the decree requires defendant to use words differentiating his product from plaintiff's. True, the manner and mode of such differentiation is not specified as clearly as it might be, but as we interpret the decree, it is affirmatively required. For purposes of brevity, the method of distinguishing the two products will be considered at the close of a discussion of the unfair competition aspect of this case.

The District Court found that although defendant had not been guilty of actual fraudulent intent to pass off his goods as those made by the plaintiff, he had engaged in unfair competition. Hence the court entered the decree here in question. Defendant has not filed a cross-appeal, and does not contend that the decree is wrong in restraining him to the extent that it does. Instead, defendant seeks only to uphold his right to use his name in the manner found permissible by the District Court. Since that court expressly found that there was no confusion in products, the issue is narrowed to whether the decree is adequate to prevent confusion of source. Since this is the major issue in this case, the intermingled claims of trade-mark infringement and unfair competition may be considered together. Plaintiff argues from both, and it has often been said that the former is but a branch of the latter.

Plaintiff contends that defendant should be prohibited from making use of the name "Horlick" to designate his product. We cannot agree, because the Supreme Court has ruled that a man may use his own name reasonably and honestly for a legitimate purpose in his own business, Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972; Herring-Hall-Marvin Safe Company v. Hall's Safe Company, 208 U. S. 554, 28 S.Ct. 350, 52 L.Ed. 616, and that the first user, in choosing a family name for his business, assumes the risk of others of the same name using such name fairly in their own business, Brown Chemical Co. v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 35 L.Ed. 247. Nor has L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142, abrogated the rules so laid down. On the contrary, it emphasizes the principle that in cases concerned with a person's use of his own surname, the power of the court is properly directed towards the correcting of an abuse of the right to use a personal name rather than the denial of that right.

Absolute restraint of the defendant from using his own name in certain ways may be necessary to prevent confusion in some instances where there is bad faith, Vick Medicine Co. v. Vick Chemical Co., 5 Cir., 11 F.2d 33; De Nobili Cigar Co. v. Nobile Cigar Co., 1 Cir., 56 F.2d 324, for the reason that a man may not use it for the purpose of stealing the good will of another's business. But defendant did not deliberately intend to steal anything in the case at bar. He made use of his own name in good

faith, thinking the ways in which he used it were honest and fair. There was no deception or misrepresentation here.

■■ In the cases plaintiff cites,[1] the products were in direct competition, whereas here they are not. The secondary meaning which plaintiff's name had achieved related to malted milk, not dog food. Moreover, the marks here are not identical. As modified by the decree of the District Court, they are different. Even as unmodified, plaintiff's name is in the possessive whereas defendant's is in the nominative, and such a small difference is not wholly without significance. Cf. Horlick's Malted Milk Corporation v. Horlick's Inc., 9 Cir., 59 F.2d 13. Plaintiff's name is printed in an arc, whereas defendant's is printed in a straight line. In plaintiff's authorities,[2] there was often substantial similarity of one or more of the following features of the mark: style, shape, size, format, color; whereas here there is no such similarity between plaintiff's mark and defendant's mark. Defendant uses a large cut of a dog on its label, whereas plaintiff uses three small cows. Such differences may properly be considered as bearing upon the likelihood of confusion after defendant's mark has been amended in conformance with the decree which will be entered. Kellogg Company v. National Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.

■■ Furthermore, the interest plaintiff asks us to protect is very largely speculative, contingent, and future, because plaintiff is not in the business of making dog food and there is no showing that it ever will be. Thus plaintiff is trying to preempt the name Horlick in many of its possible permutations and combinations in a market which it may never choose to exploit. It has been said that advertising is a very special kind of magic, but courts must beware of being bewitched into granting a monopoly covering all businesses upon the theory that the advertiser has "property" in the name per se. The underlying principle, that the first user of a surname used as a

trade-mark or trade-name will be protected from a newcomer who diverts business from the first user by misleading customers who mean to deal with him, must not be obscured. Hence stricter limitation upon the use of a surname is required if the newcomer's products are directly competitive than when they are not. S. C. Johnson & Son v. Johnson, 2 Cir., 116 F.2d 427. Plaintiff has not shown that in order to hold or develop its present business it must preserve its identity in the dog food market, and so cannot rely upon its interest in possible expansion of business into that market as ground for absolutely prohibiting defendant from using his own name, which resembles plaintiff's trade-mark, in the dog food market.

■ The obligation resting upon defendant in using his name is not to insure that every purchaser will know that he is the maker, but to use every reasonable means to prevent confusion. Kellogg Company v. National Biscuit Co., 305 U.S. 111, 121, 59 S.Ct. 109, 83 L.Ed. 73. Because of all the dissimilarities noted above, and because the decree requires defendant to distinguish his product from plaintiff's product, we are not persuaded that plaintiff should have the extremely broad decree it seeks.

■ We conclude that defendant may use his name as a designation for his product. But in order to carry out the District Court's suggestion (50 F.Supp. 417, 419) that "If the defendant exercised the reasonable care required, he would have used his own name and address, such as 'Manufactured by Charles Horlick, Horlicksville, Racine, R. F. D., Wisconsin', " and further to eliminate the possibility that purchasers will think defendant's product is made by plaintiff, the decree will be modified by enjoining the defendant from using the name "Horlick" on his packages and labels except in combination with his first name, "Charles", in type equally large and conspicuous, and from using the phrase "Manufactured by Horlick of Horlicksville, Racine, Wisconsin." He shall substitute in

1 Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046; Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195; L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 35 S.Ct. 91, 59 L.Ed. 142; Baglin v. Cusenier Co., 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863; Walter Baker & Co. v. Sanders, 4 Cir., 80 F. 889; Walter Baker & Co. v. Slack, 7 Cir., 130 F. 514; Clark Thread Co. v. Armitage, 2 Cir., 74 F. 936; Chickering v. Chickering & Sons, 7 Cir., 215 F. 490; Moyer v. Dr. B. L. Bull's Vegetable Medicine Co., 7 Cir., 58 F. 884; Royal Baking Powder Co. v. Royal, 6 Cir., 122 F. 337.

2 Ibid.

lieu of the last phrase the words, "Manufactured by Charles Horlick, Horlicksville, Racine, Wisconsin." The words, "Manufactured by Charles Horlick, Horlicksville, Racine, Wisconsin," will appear in letters one-half the size of the printing used in the phrase "Charles Horlick" on the face of the package.

When the modifications herein suggested are carried out, there will be no poaching on the commercial magnetism of plaintiff's trade-mark, Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed 1381, and defendant's use of his name will be wholly honest, and hence permissible. See Annotation in 47 A.L.R. 1190.

The decree of the District Court will be modified in accordance with this opinion, and as modified it is affirmed.

MINTON, Circuit Judge (dissenting).

I am unable to agree with the extraordinary opinion of the majority. As I read it and observed how completely it disposed of the plaintiff's demands, I was unprepared for the conclusion of the opinion which not only upheld the injunction granted by the District Court but granted relief not given by that court or requested by the plaintiff.

The District Court enjoined the use of the name "Horlick" by the defendant unless some other word or words were associated with it and printed on the packages in letters one-half the size of the word "Horlick." The plaintiff demanded below and argued here that the name associated with "Horlick" should be of the same size type as the word "Horlick." This demand of the plaintiff is granted by the majority opinion, which also supplies the name to be used with "Horlick," to wit, "Charles."

The majority opinion did not stop there but, going further, imposed limitations upon the defendant which the plaintiff had not even requested. The defendant recited at the bottom of his packages in small type, "MANUFACTURED BY HORLICK OF HORLICKSVILLE RACINE, WISCONSIN." In the same position on the plaintiff's packages was printed, "MANUFACTURED BY HORLICK'S MALTED MILK CORPORATION, RACINE, WIS., U. S. A." Across this printing was a large facsimile signature in red ink, "Horlick's." By the majority opinion the defendant is required to substitute on the bottom of his packages in lieu of the words above quoted the following: "Manufactured by Charles Horlick, Horlicksville, Racine, Wisconsin," this to appear in letters one-half the size of the printing used in the words "Charles Horlick" on the face of the packages. These are the impositions placed by the majority upon the defendant, although he had committed no wrongful act. He did nothing which he did not have an unquestioned legal right to do.

The plaintiff sued for infringement of its trade-mark. The majority opinion denies such infringement, since the products were not of the same descriptive properties. The plaintiff also sued for unfair competition. The majority opinion states that the defendant had a right to use his own family name in marketing the dog food which he manufactured, so long as he engaged in no deceptive or fraudulent practices. In treating the unfair competition phase of the case, the majority opinion holds that since the products were not in competition the secondary meaning attached to the plaintiff's name had no application. The majority says that the "products * * * appeal to entirely different markets"; that there is "no confusion in products"; that "a man may use his own name reasonably and honestly for a legitimate purpose in his own business"; that the "defendant did not deliberately intend to steal anything in the case at bar. He made use of his own name in good faith, thinking the ways in which he used it were honest and fair. There was no deception or misrepresentation here." Indeed, it was the plaintiff who seemed to be the performer of sharp practices and the pirate in the piece. As the majority says, "the interest plaintiff asks us to protect is very largely speculative, contingent, and future, because plaintiff is not in the business of making dog food and there is no showing that it ever will be. Thus plaintiff is trying to preempt the name Horlick in many of its possible permutations and combinations in a market which it may never choose to exploit." There was no similarity in the packages. They were no more alike than a dog is like a cow.

Thus, the majority absolves the innocent defendant from all wrongdoing but nonetheless imposes certain duties upon him in order to lessen any confusion which might arise in the public's mind over who manufactures dog food and who manufactures malted milk. As if that made any differ-

ence. If there is any likelihood of such confusion, it grows out of the situation and not out of any wrongful conduct on the part of the defendant. The defendant is as blameless as the plaintiff. Why should the defendant be required to assume the entire burden of clearing up confusion which no wrongful conduct of his created? The only thing the defendant has done is to use his own name in marketing a non-competitive product, without fraud or deception. Surely courts of equity should not undertake the task of enjoining mere confusion, unconnected with any wrongful act.

In Brown Chemical Company v. Meyer, 139 U.S. 540, 544, 11 S.Ct. 625, 627, 35 L.Ed. 247, the court said:

"A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a reasonable, honest, and fair exercise of such right, he is no more liable for the incidental damage he may do a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney, or the fall of his neighbor's house by reason of necessary excavations upon his own land. These and similar instances are cases of damnum absque injuria."

In Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 140, 25 S.Ct. 609, 614, 49 L.Ed. 972, speaking of the right of one to use his own name, the court said: "Having the right to that use, courts will not interfere where the only confusion, if any, results from a similarity of the names, and not from the manner of the use. The essence of the wrong in unfair competition consists in the sale of goods of one manufacturer or vendor for those of another; and if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails."

In Canal Company v. Clark, 13 Wall. 311, 327, 20 L.Ed. 581, the court said: "Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth."

In the light of these clear expressions of the Supreme Court, I cannot see how the plaintiff was entitled to any relief, let alone the additional relief which the majority opinion gives it. I would affirm the District Court, since the defendant filed no cross-appeal.