43 C.C.P.A.(Patents)

**FORT DODGE LABORATORIES, Inc., Appellant,**

v.

**E. L. HAEUSSLER, Appellee.**
Patent Appeal No. 6209.

United States Court of Customs and Patent Appeals.
June 21, 1956.

and external antiseptic and antiferment for veterinary use."

The Examiner of Interferences held that there was no substantial difference between the marks of the parties and that the record clearly established the opposer's (appellant's) prior use of its mark, but that the goods of the respective parties were so distinct that the concurrent use of their marks would not be likely to result in confusion. Similar holdings were made by the Assistant Commissioner.

The holdings that the marks are substantially identical and that appellant's use of its mark "Fortogen" was prior to any use by appellee of the mark "Fortogenol" are clearly correct and are not controverted here. The sole issue, therefore, is whether the goods of the respective parties are so distinct that the concurrent use of substantially identical marks upon them would not be likely to lead purchasers or prospective purchasers to suppose that they had a common source.

It is urged by appellant that since appellee's application describes the goods to which its mark is to be applied simply as "a multivitamin and mineral product," the goods might include such a product designed as a food or medicinal preparation for animals. A similar contention was made before the Examiner of Interferences, who disposed of it as follows:

"It is argued by the opposer that the applicant's application is not limited to vitamins for human consumption, and that its vitamin product could equally well be used for animals. This contention presents no different problem than that existing in the cited cases, in each of which the product for human consumption no doubt could have been used for animal consumption equally as well. It does not appear that there was any restriction to human usage in those cases, it being sufficient to establish that the goods were prepared primarily or exclusively for

Mortimer Altin, New York City (Louis H. Baer, Merrick, N. Y., of counsel), for appellant.

Harris, Kiech, Foster & Harris, and Warren L. Kern, Los Angeles, Cal. (Robert E. LeBlanc, Washington, D. C., of counsel), for appellee.

Before JOHNSON, Acting Chief Judge, and WORLEY, COLE, and JACKSON, retired, Associate Judges.

COLE, Judge.

This is an appeal from the decision of the Assistant Commissioner of Patents, affirming a decision of the Examiner of Interferences, dismissing an opposition by Fort Dodge Laboratories, Inc., appellant here, to an application by E. L. Haeussler for registration of the trademark "Fortogenol" for "a multivitamin and mineral product." Appellant did not rely on any prior registration, but based its opposition on its use of the trademark "Fortogen" on "an internal

human consumption. The record in this case shows that applicant's vitamin product was prepared exclusively for human consumption."

The "cited cases" referred to by the Examiner of Interferences are: Kellogg Co. v. Bremner Bros., 45 U.S.P.Q. 446; Pabst-Ett Corp. v. Dr. W. J. Ross Co., 45 U.S.P.Q. 532; Horlick's Malted Milk Corp. v. Horlick, 7 Cir., 143 F.2d 32; General Mills, Inc., v. Freed, 89 F.2d 664, 24 C.C.P.A., Patents, 1171; Dr. Salsbury's Laboratories v. Enrich Products Co., Inc., 51 U.S.P.Q. 300; Whitehall Pharmacal Co. v. Wagner, 83 U.S.P.Q. 529; Sharpe & Dohme, Inc., v. Brookfield Laboratories, 85 U.S.P.Q. 82; Myers v. Polk Miller Products Corp., 201 F.2d 373, 40 C.C.P.A., Patents, 739; In re Myers, 201 F.2d 379, 40 C.C.P.A., Patents, 747, and Ex parte The Herrman-McLean Co., 98 U.S.P.Q. 455.

We are in agreement with the Examiner of Interferences that, on this record, appellee's multivitamin and mineral product was manufactured exclusively for human use. Under the circumstances of this case, we think that the normal meaning of an application for a multivitamin and mineral product would be that it was limited to human use, and that appellee's application should be considered as so limited.

The record shows that appellant's use of the trademark "Fortogen" is confined to a preparation which is used exclusively in the treatment of animals and is sold only to veterinarians, although the farmer whose animals are being treated may see the "Fortogen" label "once in a while." No evidence was offered to show actual confusion resulting from the use of the marks here involved. A veterinarian called by appellant testified that if he saw the same or very similar marks used on preparations for human, as distinguished from animal, use he would think the two were being produced by the same company and would make inquiry to establish whether that was the case. However, our comment in Quaker Oats Co. v. St. Joe Processing Co., Inc., 232 F.2d 653, 43 C.C.P.A., Patents, ——, is particularly appropriate here:

"Before reaching the main issue in the present case, we deem it necessary to comment on the weight to be given the witnesses' opinions that the marks would be likely to cause confusion. In this respect it has been held that such testimony amounts to nothing more than an expression of opinion by the witness, which obviously is not binding upon either the tribunals of the Patent Office or the courts. * * * If such testimony were adopted without considering other aspects of the case, the effect would be to substitute the opinions of the witnesses for the ultimate decision to be reached by the court and would therefore be improper."

As indicated by the cases above cited, it has been the consistent practice of the Patent Office and the courts to regard foods and medicinal preparations designed for animal use as distinct from corresponding preparations for human beings, so far as the question of confusing similarity is concerned, and no case in which a contrary conclusion has been reached with regard to such goods has been cited by appellant.

We are of the opinion that the prior decisions cited are based on sound considerations. There is no evidence to show that, if preparations for human and animal use are made by the same producers, they are commonly marketed under the same or similar trademarks, and it seems likely that such marketing is deliberately avoided on the ground that prospective purchasers of food or medicine for their own use would be unfavorably impressed if they had seen a product under the same trademark on sale for animal use. Under such circumstances, the appearance of similar marks on such goods would probably be regarded as a coincidence rather than an indication of common origin.

It is suggested by appellant that the slight difference between the marks here involved might cause purchasers to be-

lieve that the products were made by the same company and that the marks were deliberately differentiated to distinguish the preparations for human and animal use. However, there is nothing in the letters "ol" which constitute the difference between the marks to suggest any such relationship between the products, and we think it unlikely that a mistake such as that suggested would occur.

In addition to the fact that appellee's product is designed exclusively for human use and appellant's for use in connection with animals, further distinctions exist in that the former product is for internal use as a dietary food supplement, while the latter is used principally externally and for medicinal purposes; and that the former is sold directly to consumers, through drug stores, while the latter is sold only to veterinarians.

Appellant asserts that trade practices may change so that appellee's product might be used for animals, or appellant might sell its product through drug stores. Those contingencies appear to be too remote to have any substantial weight in determining the question here at issue particularly in view of the inherent differences in the nature of the goods themselves. The record shows that appellee's product has not been used or advertised for use to supplement the diet of animals and it could scarcely be used for that purpose without a complete revision of sales policy as well as a study to determine the kinds of animals for which it was adapted, and the dosage to be used.

As regards the possibility that appellant might sell its product through drug stores, the following testimony by appellant's president is pertinent:

"Q48. What, in your experience, is considered by the veterinarians as ethical practice in the sale of veterinary medicines? A. Sales that are made only directly to the veterinary profession.

"Q49. Have you had any personal experience with veterinarians that would indicate to you what their reaction would be if they felt that Fort Dodge Laboratories was distributing through drug stores. A. Yes, quite a few such instances.

"Q50. Could you give us an example? A. Reaction is very unfavorable because the inference in such cases has been that we might have changed our sales policy and decided to sell our products to the public, either directly or through the drug trade.

"Q51. Has this actually happened in some instance? A. Yes.

"Q52. What has Fort Dodge Laboratories had to do to correct that situation? A. In each instance, where these occurrences have been brought to our attention, we have gone to considerable time and expense to trace down how and where the sale was made and how our products got into the possession of some unauthorized person or drug store."

In view of that testimony it seems clear that any change in appellant's policy of selling to veterinarians only is most unlikely.

Upon consideration of all the circumstances of the present case, we agree with the Patent Office tribunals that the concurrent use by the parties of their respective marks on their respective goods would not be likely to cause confusion or mistake or to deceive purchasers.

The decision of the Assistant Commissioner is affirmed.

Affirmed.

JACKSON, Judge, retired, recalled to participate.

O'CONNELL, Judge, because of illness, did not participate in the hearing or decision of this case.