## GODILLOT v. AMERICAN GROCERY CO.

(Circuit Court, D. New Jersey. January 25, 1896.)

TRADE-MARK—MONOGRAM.

One Alexis Godillot adopted a trade-mark consisting of the letters "A. G." combined in a monogram, and used same for many years on groceries made by him in France, and sold by him, and others under him, in the United States. In 1884 he sold the right to use the trade-mark in the United States to T. W. & Co., and such right afterwards passed to their successors, the T.-W. Co. In 1894 a receiver of the T.-W. Co. resold the right to Godillot. Afterwards the stock in trade of the T.-W. Co. was sold to the American Grocery Co., which began business at the former stand of the T.-W. Co., and adopted a mark consisting of the letters "A. G. Co." in a monogram similar to Godillot's, which it applied to cigars and coffee, and claimed the right to use, without restriction, in its business of dealing in groceries. *Held,* that the American Grocery Co. should be restrained from using such monogram.

H. Aplington, for complainant.
J. C. Clayton, for defendant.

ACHESON, Circuit Judge. Courts of equity interfere by injunction to protect trade-marks, upon the ground that the plaintiff has a valuable interest in the good will of his trade, and that a rival merchant or manufacturer shall not be permitted, by the use of the plaintiff's symbol, to palm off his own goods to purchasers as those of the plaintiff. McLean v. Fleming, 96 U. S. 245. To entitle a plaintiff to an injunction, it is not necessary that a specific trademark has been infringed; for, irrespective of a technical question of trade-mark, a defendant has no right, by imitative devices, to deceive purchasers, and thus induce them to believe that they are buying the goods of the plaintiff. Id.; Coats v. Thread Co., 149 U. S. 562, 13 Sup. Ct. 966. As to the degree of similarity necessary as a ground for an injunction, no precise rule, applicable to all cases, can be formulated; but the decisions agree that it is enough if the resemblance is so close that purchasers exercising ordinary caution are likely to be misled. In McLean v. Fleming, supra, the court (cit-

ing Gorham Co. v. White, 14 Wall. 511) said: "Two trade-marks are substantially the same, in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser, giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one, supposing it to be the other." The resemblance need not be such as would deceive persons who should see the two marks placed side by side. Seixo v. Provezende, 1 Ch. App. 192, 195. "Similarity, not identity," said Judge Bradley in Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 32 Fed. 94, 97, "is the usual recourse when one party seeks to benefit himself by the good name of another. What similarity is sufficient to effect the object has to be determined in each case by its own circumstances. We may say, generally, that a similarity which would be likely to deceive or mislead an ordinary, unsuspecting customer is obnoxious to the law." Applying that standard, and considering the nature and circumstances of the case, Judge Bradley there held that the name, "Cellonite Manufacturing Company," was sufficiently similar to that of the "Celluloid Manufacturing Company" to amount to an infringement of the latter trade-name.

The material facts of the present case are these: Nearly 40 years ago the plaintiff, Alexis Godillot, Jr., devised and adopted as a trade-mark a monogram composed of the letters "A" and "G" tastefully combined. Thereafter this trade-mark was constantly used in the United States by the plaintiff, and by others acting under him, upon and in connection with the sale of groceries, food products, and kindred articles. During the whole of the named period, and down to the present time, the plaintiff has owned and conducted factories in France in which fancy groceries were and are prepared for market in the United States and elsewhere; and in connection with this trade the plaintiff has uninterruptedly used, and is now using, said trade-mark. This trade-mark has been printed in different colors and sizes upon labels which have been applied to boxes, cases, and other packages of goods, and has been impressed in glass bottles, pottery, tin boxes, etc., containing merchandise, and it has become well and favoraby known in the trade here and abroad. In the year 1884 the plaintiff sold to Thurber, Whyland & Co. said trade-mark for use in the United States, and the interest of that firm in the trade-mark afterwards passed to its successor in the grocery business the Thurber-Whyland Company. On April 30, 1894, the receivers of the last-named company resold and conveyed to the plaintiff the interest in the trade-mark which he had sold to Thurber, Whyland & Co. Since the date of this reconveyance the plaintiff has been engaged in the city of New York in the grocery business, and has been using therein said trade-mark. After the plaintiff had become reinvested with the whole title to the trade-mark, on June 29, 1894, the receivers of the Thurber-Whyland Company sold the goods of that company to Thomas H. Wentworth, Jr., who subsequently sold and transferred the same to the defendant corporation, the American Grocery Company, and that company has since been engaged in the grocery business in the city of New York, in

the same building formerly occupied by the Thurber-Whyland Company and its predecessors, and advertises itself as the successor of that company. Before the commencement of this suit the defendant adopted, and began using in its business, a monogram trademark composed of the letters "A" and "G" and "Co.," and the evidence shows that it has already applied the same to a brand of cigar, a brand of whisky, and upon a calendar advertising a particular brand of coffee; and it is also proved that the defendant intends to use the same upon its letter heads and other stationery, and as its corporate seal, and the defendant here asserts its right to use said monogram as its trade-mark in its business generally.

The above-cited adjudications—including the case of Gorham Co. v. White, 14 Wall. 511—lead to the conclusion that the plaintiff is entitled to an injunction to restrain the use by the defendant of the trade-mark it has adopted. I think that there is substantial identity between the two trade-marks, within the meaning of the authorities. To say the very least, an unsuspecting purchaser would probably be misled. It may be, indeed, that, when the two monograms are laid side by side for inspection, they are distinguishable from each other. But, as we have seen, this is not the true test of infringement. If it were, then no trade-mark would be safe from piracy. The comparatively small letters, "Co.," in the defendant's trade-mark, to the eye of a casual observer, might well be taken to be part of the ornamentation. There is no good reason for such a close imitation of the plaintiff's trade-mark, and no justification therefor. Moreover, the circumstances surrounding this case are peculiar, and tend to the impugnment of the defendant's good faith. The defendant is conducting its business at the old stand where the plaintiff's trademark was so long used. Practically, it is the successor of the Thurber-Whyland Company. It has the former customers of that concern, who were accustomed to regard the A. G. monogram as designating the plaintiff's French goods. If the suggestion that the defendant chose the name "American Grocery Company" with the ulterior purpose of adopting a monogram trade-mark in imitation of the plaintiff's trade-mark be rejected, still, even in the use of its own name, fair competition requires that it avoid an unnecessary, confusing, and hurtful resemblance to a rival's long-established trade-mark, and this obligation the law will enforce. Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490; Meyer v. Dr. B. L. Bull Vegetable Medicine Co., 7 C. C. A. 558, 58 Fed. 884.

It is a matter of no consequence that the plaintiff's trade-mark registry of November 3, 1874, was for "French Fancy Groceries" only. That registered trade-mark is not the foundation of this bill. The plaintiff sues upon his common-law trade-mark. Nor is it a satisfactory answer that heretofore the plaintiff has not applied his trade-mark to any of the three particular articles of merchandise upon which the evidence shows the defendant has used its trademark. Carroll v. Ertheiler, 1 Fed. 688; Collins Co. v. Oliver Ames & Sons, 18 Fed. 561. The defendant claims the right to the unrestricted use of its trade-mark. That it intends to exercise that al-

leged right to the fullest extent appears, not only by the terms of its registered trade-mark, but by other proofs.

The claim that, by virtue of the sale of the stock of goods of the Thurber-Whyland Company by the receivers of that company, an implied license to use the A. G. trade-mark, generally, passed to the purchaser, is unfounded. The receivers had previously, for a large money consideration, sold and reconveyed to the plaintiff all the interest which the Thurber-Whyland Company had in the trade-mark. When they subsequently sold the stock of goods of the concern, they had no right or title in or to the trade-mark, and they did not attempt to invest their vendee with such supposed license. Of course, the purchaser of the goods acquired the right to resell those particular goods with the marks they bore, and this no one disputes. Let a decree be drawn in favor of the plaintiff.