### PECHEUR LOZENGE CO., Inc., v. NATIONAL CANDY CO., Inc.

### No. 7679.

Circuit Court of Appeals, Third Circuit.

June 30, 1941.

Rehearing Denied Aug. 26, 1941.

Writ of Certiorari Granted Nov. 10, 1941.

See —— U.S. ——, 62 S.Ct. 182, 86 L.Ed. ——.

James D. Carpenter, Jr., of Jersey City, N. J. (McDermott, Enright & Carpenter and Carl S. Kuebler, all of Jersey City, N. J., on the brief), for appellant.

Alfred J. L'Heureux, of New York City (Henry Plate, of Ridgefield, N. J., and Morgan & Lockwood and Peter X. McManus, all of New York City, on the brief), for appellee.

Before CLARK, JONES, and GOODRICH, Circuit Judges.

CLARK, Circuit Judge.

The action below is one for trade-mark infringement or more accurately and in the descriptive phrase of the English judges "passing off". The parties are candy manufacturers. Both of them make cheap sugar lozenges of the size and appearance of a one cent piece. Defendant was the first (1908) to adopt this form of lozenge but until 1936 sold them in bulk, so many for a penny. The plaintiff, on the other hand, from the commencement of its business in 1916 has continuously sold its lozenges packed in cylindrical rolls of fifteen candies to a roll. The wrapper (transparent wax paper or cellophane) for these rolls from the beginning emphasized a monetary theme. In its design it endlessly reiterated the fancy phrase "Pay Roll" and combined it with facsimiles of small coins decorated with the heads of Presidents, the familiar buffalo, etc. In so doing, it seemed to be following defendant's lead in capitalizing a child's desire "to play with grownup things". These wrappers, eight in number, differed in detail, but the Midas touch aforementioned predominated in all of them.

The color scheme of all but one of the wrappers is red and blue. That one was used for six months in 1934 and on it the "coins" are in light lemon yellow. It is suggested that this color proved impractical as a matter of lithographing. Inasmuch as two years later, the defendant's wrappers show coins of an even brighter yellow, this explanation seems a little doubtful. There seems to be some confusion in the learned District Judge's opinion about this yellow wrapper. It

is true that it was discontinued. We question, however, whether such discontinuance amounted to an abandonment. The latter requires either a manifested intention to abandon or the disappearance of significance in the minds of the public. [1] Besides this difference in color, there is only one other important difference between the wrappers. Instead of the word "Pay" before "Roll", the defendant uses the word "Cash".

The march of time has enhanced the value of what was originally the symbol of the guild craftsmen. Modern conditions preclude knowledge of individual skill. Modern advertising associates previous satisfaction with a particular symbol. So the trade-mark or name becomes a guarantee of quality. A leading authority emphasized this: "The true functions of the trademark are, then, to identify a product as satisfactory and thereby to stimulate further purchases by the consuming public. The fact that through his trademark the manufacturer or importer may 'reach over the shoulder of the retailer' and across the latter's counter straight to the consumer cannot be overemphasized, for therein lies the key to any effective scheme of trademark protection. To describe a trademark merely as a symbol of good will, without recognizing in it an agency for the actual creation and perpetuation of good will, ignores the most potent aspect of the nature of a trademark and that phase most in need of protection * * *. The mark actually sells the goods * * *." Schechter, The Rational Basis of Trade-mark Protection, 40 Harvard Law Review 813, 818, 819.[2]

There is no great divergence as to governing legal principles. It is agreed that we need look only for probability of deception or the reasonable likelihood of misleading potential customers. As an English case puts it: "Now I say in this case if one man will use a label similar to the label of another—or will use a label resembling it, he must use it under such circumstances and with such sufficient precaution that the reasonable probability of error shall be avoided, notwithstanding

[1] See Nims, Unfair Competition of Trade-Marks (3d ed.) § 408; Derenberg, Trade-Mark Protection and Unfair Trading § 52; Trade-Marks—Abandonment—Requirements For, 22 Minnesota Law Review 750 (note); Abandonment As A Defense in Trade-Mark and Unfair Competition Cases, 30 Columbia Law Review 695 (note).

[2] Cf. Grismore, Fraudulent Intent in Trade Mark Case, 27 Michigan Law Review 857.

the want of care and caution which is so commonly exhibited in the course of human affairs." Lord O'Hagen, Singer Co. v. Wilson, L.R., 3 A.C. 395.[3]

This probability or likelihood may take account of the kind of customer. This also has been stressed by the English judges: "The goods in question are made up in penny packets. The poorer classes who buy this class of goods do not seem to distinguish the goods by the label but by the general appearance which the articles present." Lord Gorell, speaking for the House of Lords, in William Edge & Sons v. William Nichols & Sons Ltd., 28 P.L.R. 582.

The test is one of similarity not of identity: "It is not necessary to show that customers have actually been deceived by the alleged infringement, it is enough that there is a reasonable likelihood of deception. In determining the probability of deception, similarity and not identity is the test." Handler and Pickett, Trade-Marks and Trade Names —An Analysis and Synthesis, 30 Columbia Law Review 759, 777.

The color is not determinative: "* * * It would not be giving the complainant a monopoly of yellow to restrain the sale of a particular yellow package, where, in addition to the color, a number of other elements, each differing more or less from its analogue in complainant's package, had been so collated together as to produce a general appearance calculated to delude the unwary purchaser." N. K. Fairbank Co. v. R. W. Bell Mfg. Co., 2 Cir., 77 F. 869, 876.[4]

And finally, neither is a side by side comparison. We quote for the third and last time from our legal progenitors: "It is hardly necessary to say that in order to entitle a party to relief it is by no means necessary that there shall be absolute identity. What degree of resemblance is necessary is from the nature of things a matter incapable of definition a priori. All that courts of justice can do is to say that no trader can adopt a trade mark so resembling that of a rival as that ordinary purchasers with ordinary caution are likely to be misled. It would be a

mistake, however, to suppose that the resemblance must be such as would deceive persons who should see the two marks placed side by side. The rule so restricted would be of no practical use." Lord Cranworth, Siezo v. Probyade, L. R. 1 Ch. 196.

The members of the court are not in accord in the application of these principles to the case at bar. The majority feel that greater emphasis should be given to these two facts. Inexpensive candy lozenges wrapped in cylindrical rolls are a common item in the candy trade. Defendant's use of the term "Cash" is of long standing.

The writer of this opinion, on the other hand, thinks it wise to adopt for this class of cases what might be called the Draconian rule enunciated by Judge Learned Hand. He said: "In choosing an arbitrary trade-name, there was no reason whatever why they should have selected one which bore so much resemblance to the plaintiff's; and in such cases any possible doubt of the likelihood of damage should be resolved in favor of the plaintiff. Of course, the burden of proof always rests upon the moving party, but having shown the adoption of a similar trade name, arbitrary in character, I cannot see why speculation as to the chance that it will cause confusion should be at the expense of the man first in the field. He has the right to insist that others in making up their arbitrary names should so certainly keep away from his customers as to raise no question." Lambert Pharmacal Co. v. Bolton Chemical Corporation, D.C., 219 F. 325, 326.[5]

The primary theme of both wrappers is one of scattered coins. The word appropriate to that theme should clearly have a monetary connotation. Plaintiff has chosen "Pay". Defendant has not taken much advantage of an opportunity "limited only by phonetics and [its own] imagination".[6] On the contrary, it has selected the most closely related one syllable word in the language. And it has not troubled to change the second word of the phrase[7] or to incorporate in its wrapper any other difference except

---

[3] Quoted by Meredith, Master of the Rolls (Ireland), in Hennessy & Co. v. Keating, 24 P.L.R. 485.

[4] Hopkins, Trademarks, Tradenames and Unfair Competition, 4th Ed., § 116; Derenberg, Trade-Mark Protection and Unfair Trading, 302.

[5] Cf. Unfair Competition—Trade-Marks —Descriptive Words, 2 Brooklyn Law Review 296.

[6] Rubyette Co. v. Vineland Products Co., D.C., 48 F.2d 288.

[7] Cases passing upon more than one word trade-names are collected in Nims,

possibly[8] the color of the coins. Accordingly, it would seem to me that there is no room even for the speculation spoken of by Judge Hand. Particularly is that so as the grubby fingers of prospective purchasers in the case at bar are not apt to pick and choose with much discrimination.

Judge JONES and Judge GOODRICH vote to reverse the decree of the District Court, and it is accordingly reversed.