**PHILCO CORPORATION v. PHILLIPS MFG. CO.**

**No. 7997.**

Circuit Court of Appeals, Seventh Circuit.
Jan. 19, 1943.

C. J. Hepburn, of Philadelphia, Pa., and Louis Goldman and Robert G. Dreffein, both of Chicago, Ill., for appellant.

Wilfred S. Stone and Louis A. Bisson, both of Chicago, Ill., Louis F. Gillespie, of Springfield, Ill., and Lionel V. Tefft, of Chicago, Ill., for appellee.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This is a trade-mark infringement and unfair competition suit. Plaintiff filed its complaint to restrain the Phillips Manufacturing Company from using the word "Phill-Co" to identify its products. Plaintiff claimed that such use infringed its trade-mark "Philco" and constituted unfair competition through misappropriation of its trade-mark and trade-name "Philco". After a temporary restraining order was entered, the cause was referred to a Master in Chancery, who, after hearing the testimony and the stipulations of the parties, made certain findings and recommended that the restraining order be vacated. The District Court adopted the Master's findings of fact, confirmed his conclusions of law, and dissolved the temporary restraining order. To reverse the order, plaintiff appeals.

Plaintiff is a Pennsylvania corporation and defendant an Illinois corporation. Plaintiff's trade-mark "Philco" is registered in the United States Patent Office under the Trade-Mark Act of 1905, 33 Stat. 724, 15 U.S.C.A. § 81 et seq. Thus, jurisdiction of the District Court was based on three grounds—diversity of citizenship, with the jurisdictional amount involved; § 17 of the Trade-Mark Act of 1905, 33 Stat. 728, 15 U.S.C.A. § 97; and § 24(7) of the Judicial Code, 36 Stat. 1092, 28 U.S.C.A. § 41(7). Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U. S. 315, 59 S.Ct. 191, 83 L.Ed. 195.

There is no controversy as to the substantial identity in appearance and absolute identity in sound of the marks "Philco" and "Phill-Co," and there is no question as to plaintiff's having appropriated and used its mark before defendant did. The only question is whether the goods upon which plaintiff and defendant use their respective marks are so similar that under the applicable law defendant's use of the mark "Phill-Co" will be enjoined.

Plaintiff has emphasized its claims of common law trade-mark infringement and unfair competition, rather than statutory trade-mark infringement under the Act of 1905. It contends that the applicable law on these nonstatutory questions is the law of each of the States in which the alleged common law trade-mark infringement and unfair competition occurred; it has apparently abandoned the position that federal law governs, although it urged this alternatively in its original brief. Defendant contends that only the law of Illinois is applicable. This was also the conclusion of the Master and the court below.

Although we affirm the order of the District Court vacating the temporary restraining order, the court's view of the applicable law was not altogether correct.

The determination of the applicable law in this case involves three questions: (1) Does the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, include suits in equity. (2) If so, should the doctrine include actions for trade-mark infringement and unfair competition. (3) If State law governs, which State is it whose law is to be applied.

*First.* In Erie R. Co. v. Tompkins, supra, the Supreme Court held that the Rules of Decision Act, § 34 of the Judiciary Act of 1789, 28 U.S.C.A. § 725, required a federal court whose jurisdiction was based on diversity of citizenship to apply the decisional as well as statutory law of the State in which the plaintiff's injuries were received. However, as was pointed out in Russell v. Todd, 309 U.S. 280, 287, 60 S.Ct. 527, 531, 84 L.Ed. 754, the Rules of Decision Act applies only to "trials at common law," not to suits in equity.

The decisions of the Supreme Court since the Erie case have established that the doctrine of that case applies at least to diversity cases involving equitable suits or remedies based upon underlying legal rights, or brought in aid or support of legal rights. Ruhlin v. New York Life Insurance Co., 304 U.S. 202, 58 S.Ct. 860, 82 L.Ed. 1290; New York Life Insurance Co. v. Jackson, 304 U.S. 261, 58 S.Ct. 871, 82 L.Ed. 1329; West v. American Telephone & Telegraph Co., 311 U.S. 223, 236, 61 S. Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956. Trade-mark and unfair competition suits in equity are considered as brought in aid or support of legal rights. Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L. Ed. 526; Nims, Unfair Competition and Trade-Marks (3rd ed. 1929) 1019. Consequently, no objection may be raised to the application of the Erie doctrine here solely on the ground that this is a suit in equity.

*Second.* In the field of trade-mark infringement and unfair competition it has long been recognized that all rights originally existed by virtue of the common law

of the several States. United States v. Steffens (Trade-Mark Cases), 100 U.S. 82, 92, 25 L.Ed. 550. Thus, in one sense, there has not been thought to be a federal general common law in the field. But in another sense there has been a federal general common law and cases have been "governed by federal law" within the meaning of the Erie doctrine, for federal courts have exercised independent judgment as to what "the common law" was in all cases in the field. The instant case requires us to draw the line between those cases still "governed by federal law" (federal courts make an independent determination of the law) and those "governed by State law" (federal courts are bound by the views of a particular State court).

For our purposes, cases brought in the federal courts in the field of unfair competition (not including Federal Trade Commission cases) may be divided into six categories: [1]

*Both trade-marks used in interstate commerce, and one or both registered in Patent Office.*

(1) Infringement of a statutory trademark by use of a similar mark on goods of "substantially the same descriptive properties" within the meaning of the Trade-Mark Acts.

[1] The following are examples:

(2) (a) Aunt Jemima Mills Co. v. Rigney & Co., 2 Cir., 247 F. 407, L.R.A. 1918C, 1039 (flour, pancake syrup); Peninsular Chemical Co. v. Levinson, 6 Cir., 247 F. 658 (medicine, cigars); Aluminum Cooking Utensil Co. v. Sargoy Bros. & Co., D.C., 276 F. 447 (aluminum cooking utensils, tin wash boilers); Wilcox & White Co. v. Leiser, D.C., 276 F. 445 (player pianos, phonographs); Anheuser-Busch v. Budweiser Malt Products Corporation, 2 Cir., 295 F. 306 (beer, malt syrup); Ward Baking Co. v. Potter-Wrightington, Inc., 1 Cir., 298 F. 398 (bread, flour); Vogue Co. v. Thompson-Hudson Co., 6 Cir., 300 F. 509 (magazine, hats); Hudson Motor Car Co. v. Hudson Tire Co., D.C., 21 F.2d 453 (automobiles, tires); Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972 (flashlights, locks); Duro Co. v. Duro Co., D.C., 27 F.2d 339 (spark plugs, internal combustion engines); Standard Oil Co. v. California Peach & Fig Growers, Inc., D.C., 28 F.2d 283 (mineral oil, figs); Del Monte Special Food Co. v. California Packing Corporation, 9 Cir., 34 F.2d 774 (oleomargarine, other food products); L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272 (fountain pens, razor blades). (b) Hudson Motor Car Co. v. Hudson Tire Co., supra.

(3) (a) Peninsular Chemical Co. v. Levinson, supra; Anheuser-Busch v. Budweiser Malt Products Corporation, supra; Del Monte Special Food Co. v. California Packing Corporation, supra. (b) Akron-Overland Tire Co. v. Willys-Overland Co., 3 Cir., 273 F. 674 (tires, automobiles). (c) Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 59 S. Ct. 109, 83 L.Ed. 73; Peninsular Chemical Co. v. Levinson, supra; Aluminum Cooking Utensil Co. v. Sargoy Bros. Co., supra; Rytex Co. v. Ryan, 7 Cir., 126 F.2d 952; Time, Inc. v. Viobin Corporation, 7 Cir., 128 F.2d 860. (d) Ad-dressograph-Multigraph Corporation v. American Expansion Bolt & Manufacturing Co., 7 Cir., 124 F.2d 706.

(4) (a) Kellogg Co. v. National Biscuit Co., supra; Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 62 S. Ct. 853, 86 L.Ed. 1103. (b) Kellogg Co. v. National Biscuit Co., supra; Florence Manufacturing Co. v. Dowd & Co., 2 Cir., 178 F. 73.

(5) (a) Wisconsin Electric Co. v. Dumore Co., 6 Cir., 35 F.2d 555 (electric washing machines, other electrical household devices); (b) Wall v. Rolls-Royce of America, 3 Cir., 4 F.2d 333 (radio tubes, automobiles); Armour & Co. v. Master Tire & Rubber Co., D.C., 34 F.2d 201 (meat and allied products, tires); Finchley, Inc. v. Finchly Co., D.C., 40 F.2d 736 (men's clothing, women's coats).

(6) (a) Wisconsin Electric Co. v. Dumore Co., supra; Folmer Graflex Corporation v. Graphic Photo Service, D.C., 44 F.Supp. 429; (b) Finchley, Inc. v. Finchly Co., supra; American Products Co. v. American Products Co., D.C., 42 F.2d 488 (non-carbonated beverages, carbonated beverages); Horlick's Malted Milk Corporation v. Horluck's, Inc., 9 Cir., 59 F.2d 13 (malted milk powder, malted milk beverage); Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850 (new auto parts, second-hand auto parts); Alfred Dunhill of London, Inc. v. Dunhill Shirt Shop, Inc., D.C., 3 F. Supp. 487 (smokers' supplies, shirts); Great Atlantic & Pacific Tea Co. v. A. & P. Cleaners & Dyers, D.C., 10 F.Supp. 450 (grocery store, cleaning establishment); Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C., 20 F. Supp. 703 (groceries; radios, washing machines, and electric refrigerators). (c) Pecheur Lozenge Co. v. National Candy Co., supra; Socony-Vacuum Oil Co. v. Rosen, 6 Cir., 108 F.2d 632; Folmer Graflex Corporation v. Graphic Photo Service, supra.

(2) (a) Unfair competition against statutory trade-mark through use of a similar mark on goods which might naturally be supposed to come from plaintiff, although not of the "same class" or of "substantially the same descriptive properties." (Probable confusion as to source without direct competition.) (b) Unfair competition through use of a trade-mark similar to plaintiff's trade name.

(3) Unfair competition other than through use of a trade-mark: (a) Use of trade name similar to plaintiff's statutory trade-mark. (b) Use of trade name similar to plaintiff's trade name. (c) Other forms of "passing off" of defendant's goods as those of plaintiff, such as imitation of get-up, label, package, or general appearance; express statement of connection between plaintiff and defendant; etc. (d) Unfair competition other than "passing off," such as betrayal of trade secrets, disparagement of rivals and their goods, instigation to breach of contract, molestation and physical interference, etc.

*One or both marks used in intrastate commerce; or both unregistered in Patent Office (or held invalid under the Trade-Mark Acts) although used in interstate commerce.*

(4) (a) Infringement of common law trade-mark. (b) Unfair competition through use, on goods of same descriptive properties, of mark similar to plaintiff's "secondary meaning" mark.

(5) Unfair competition as described in (2), supra, against common law trade-mark or "secondary meaning" mark.

(6) Unfair competition as described in (3), supra, against common law trade-mark or "secondary meaning" mark.

Classification of the cases along these lines makes it clear immediately that there is no serious question as to the applicable law except in the first and second categories. The others are governed by State law. This court so held with respect to (c) of the third category in Rytex Co. v. Ryan, 7 Cir., 126 F.2d 952, and Time, Inc. v. Viobin Corporation, 7 Cir., 128 F.2d 860, and with respect to (d) of the third category in Addressograph-Multigraph Corporation v. American Expansion Bolt & Manufacturing Co., 7 Cir., 124 F.2d 706. The Supreme Court held State law applicable in (a) of the fourth category in Pecheur Lozenge Co. v. National Candy Co., 315 U.S. 666, 62 S.Ct. 853, 86 L.Ed. 1103. The Supreme Court indicated the same holding with respect to (a) and (b) of the fourth category, as well as (c) of the third category, in Kellogg Co. v. National Biscuit Co., 305 U.S. 111, 113, 59 S.Ct. 109, 83 L.Ed. 73, although it considered only federal precedents in its opinion. State law was held applicable in (a) of the sixth category in Folmer Graflex Corporation v. Graphic Photo Service, D.C., 44 F.Supp. 429, 433–434, and in (c) of the sixth category in the Pecheur case, the Graflex case, and Socony-Vacuum Oil Co. v. Rosen, 6 Cir., 108 F.2d 632.

Questions arising in cases of the first category relate to the four topics dealt with in some detail in the Trade-Mark Acts—registerability, infringement, defenses, and remedies—and the topic of validity (i. e., what is a valid "trade-mark" and what constitutes "ownership"). We believe that all such questions arising under the Act of 1905 are governed by federal law, since they involve the interpretation and application of a federal statute. Chesapeake & Ohio Ry. v. Martin, 283 U.S. 209, 212, 213, 51 S.Ct. 453, 75 L.Ed. 983; Awotin v. Atlas Exchange Bank, 295 U.S. 209, 211, 212, 55 S.Ct. 674, 79 L.Ed. 1393; Yonkers v. Downey, 309 U.S. 590, 596, 60 S.Ct. 796, 84 L.Ed. 964. Although the contrary position has been taken by two courts with respect to questions of validity, Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 6 Cir., 119 F.2d 316, 322; Folmer Graflex Corporation v. Graphic Photo Service, supra, 44 F.Supp. 429, 432, this court has held that federal law controls questions relating to infringement, Rytex Co. v. Ryan and Time, Inc. v. Viobin Corporation, supra. With respect to questions of remedies, the Supreme Court in Mishawaka Rubber & Woolen Manufacturing Co. v. S. S. Kresge Co., 316 U.S. 203, 62 S.Ct. 1022, 86 L.Ed. 1381, did not expressly hold, but appears to have assumed, that federal law controls.

In the Trade-Mark Cases, supra, 100 U.S., pages 95, 96, 25 L.Ed. 550, the Supreme Court expressly refrained from holding that Congress had no power to regulate the use of trade-marks in interstate commerce. Cf. South Carolina v. Seymour, 153 U.S. 353, 14 S.Ct. 871, 38 L.Ed. 742, Warner v. Searle & Hereth Co., 191 U.S. 195, 202, 24 S.Ct. 79, 48 L.Ed. 145; see Schechter, Fog and Fiction in Trade-Mark Protection (1936) 36 Col.L.Rev. 60, 67 et seq.; Derenberg, Trade-Mark Protection and Unfair Trading (1936) 12-13. This

regulation Congress effected in the Trade-Mark Act of 1905.

In that Act Congress in a sense merely codified the law, since by restatement (e. g., marks not registerable) and by reference (e. g., meaning of terms "owner" and "trade-mark" in §§ 1, 5, 7, 16, and 19 of the Act, 15 U.S.C.A. §§ 81, 85, 87, 96, 99) it incorporated in the Act the then generally accepted State common law rules concerning trade-marks. For this reason, there are statements in many cases that by enacting the statute Congress did not create "substantive rights," but only "procedural rights." Beckwith's Estate v. Commissioner of Patents, 252 U.S. 538, 543, 40 S.Ct. 414, 64 L.Ed. 705; American Steel Foundries v. Robertson, 269 U.S. 372, 381, 46 S.Ct. 160, 70 L.Ed. 317; American Trading Co. v. H. E. Heacock Co., 285 U.S. 247, 258, 52 S.Ct. 387, 76 L.Ed. 740; and numerous lower federal court cases. And, although it was not necessary to the decision in the case and was not supported by citation of authority, there is a statement in the American Steel Foundries case that Congress was given no power to legislate upon the substantive law of trade-marks.

■ Although the question has never been squarely decided by the Supreme Court, we believe it is clear that Congress has the power to legislate upon the substantive law of trade-marks. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 468–471, 34 S.Ct. 648, 58 L.Ed. 1046 (by implication); Rossmann v. Garnier, 8 Cir., 211 F. 401, 405; cf. Trade-Mark Cases, supra, 100 U.S. page 95, 25 L.Ed. 550. Many things not themselves goods moving in interstate commerce are held to exert such a substantial influence upon the flow of commerce that they are "instrumentalities of interstate commerce," and as such subject to regulation by Congress to foster, protect, and control interstate commerce. United States v. Ferger, 250 U.S. 199, 204, 39 S.Ct. 445, 446, 63 L.Ed. 936 (bills of lading); McDermott v. Wisconsin, 228 U.S. 115, 128, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39,

and Weeks v. United States, 245 U.S. 618, 622, 38 S.Ct. 219, 62 L.Ed. 513 (labels on goods); Pensacola Telegraph Co. v. Western Union Telegraph Co., 96 U.S. 1, 10, 24 L.Ed. 708 (telegraph system); Luxton v. North River Bridge Co., 153 U.S. 525, 529, 14 S.Ct. 891, 38 L.Ed. 808 (bridges); California v. Northern Pacific R. Co., 127 U.S. 1, 39, 8 S.Ct. 1073, 32 L.Ed. 150 (railroads); Second Employers' Liability Cases, 223 U.S. 1, 47, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44. To be sure, the degree to which each of these affects interstate commerce varies greatly, but we believe that the effect of trade-marks on interstate commerce is sufficient for them to be regarded as instrumentalities or agencies of such commerce. While trade-marks are not essential to all commerce in the absolute sense that nothing could be sold without them, interstate commerce would undoubtedly suffer by their absence, as purchasers, forced to rely solely on the seller's word, grew more wary of new or unknown goods. With producer and consumer so far separated by the distributive steps of today's industrial economy, it is doubly important that a seller's identifying mark be dependable. Secondly, although it can only be speculated what positive effect trade-marks have on the volume of interstate commerce, that effect must be considerable under modern conditions of nation-wide advertising. As the Supreme Court has said, "If it is true that we live by symbols, it is no less true that we purchase goods by them." Mishawaka case, supra, 316 U.S. page 205, 62 S.Ct. page 1024, 86 L.Ed. 1381. [2]

■ It is our opinion that Congress did create substantive rights in trade-marks by the passage of the Act of 1905. If it were held that Congress created no substantive rights but only procedural rights, the Erie doctrine would require that State law govern substantive questions of trade-mark law, just as that doctrine would have required if it had been applied before the Act was passed. Mishawaka (C.C.A.) case, supra; Graflex case, supra. Under such a holding, the Trade-Mark Act of 1905

---

[2] Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; and United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141, are sometimes cited to support the contrary position, that Congress has no power to create substantive rights in trade-marks. But these cases involved only State common law trade-

marks, not trade-marks registered under the Act of 1905. And in fact the Supreme Court suggested in the Rectanus case that Congress did have the power. See Zlinkoff, Erie v. Tompkins: In Relation to the Law of Trade-Marks and Unfair Competition (1942) 42 Col.L.Rev. 955, 977, n. 90.

could have but three possible purposes: (1) to provide a forum for the application of State law to trade-mark controversies, (2) to provide for national registration of trade-marks used in interstate commerce, and (3) to shift the burden of going forward with the evidence in trade-mark litigation. But the first of these is meaningless, for prior to 1905 State law was already being applied in federal courts where there was diversity jurisdiction, and in State courts where there was not. National registration would also be virtually meaningless without national uniformity; what advantage would trade-mark users find in voluntary central registration if the United States remained a "legal checkerboard" with respect to trade-marks used in interstate commerce? See Zlinkoff, op. cit., 986. This leaves only the third as the purpose of the Act, if State law were held to govern substantive questions arising under the Act. We do not believe it can be said that this was Congress' sole objective in enacting this legislation. We believe it was also the intention of Congress to provide registered trade-marks with uniform protection in interstate commerce.

What, then, is the meaning of the statements in the cases that Congress "created no substantive rights" by the Act of 1905? In our opinion, such statements are rules of statutory construction, actually used by the courts to determine what substantive rights Congress did create. One meaning of these statements, when used in such cases as American Trading Co. v. H. E. Heacock Co., supra, and United States Printing & Lithograph Co. v. Griggs, Cooper & Co., 279 U.S. 156, 49 S.Ct. 267, 73 L.Ed. 650, is that the Act of 1905 does not apply if the alleged infringing mark is used only in intrastate commerce. A second meaning, when used in cases in which the Act does apply, is that in general [3] Congress did not intend to create statutory rights novel in scope, but only to create federal rights of the same scope as the

State common law rights already widely recognized in 1905, and that therefore a federal court interpreting the language of the Act must seek the usual 1905 State common law rules by making reference to State decisions throughout the Union as sources of precedent. Thus, courts that have said they were applying "the common law" of trade-marks in cases arising under the Act of 1905 have in fact been interpreting the language of a federal statute by referring to the same sources they would have used in construing and applying any term in a federal statute or in the Constitution which had a common law significance.

Since Congress left the terms "owner" and "trade-mark" undefined in the Act, these are perhaps the best examples of how this second rule of statutory construction has been employed; the meaning of these terms as used in the statute is determined by reference to the State common law existing at the time of the passage of the Act.

The cases of Beckwith v. Commissioner and American Steel Foundries v. Robertson, supra, illustrate how this rule of statutory construction has been employed in the interpretation of the registerability section. In the former case the Supreme Court said, at page 544, of 252 U.S., at page 416 of 40 S.Ct., 64 L.Ed. 705, that the descriptive word proviso in § 5 is "simply an expression in statutory form of the prior general rule of law that words merely descriptive are not a proper subject for exclusive trade-mark appropriation." In the latter case the Court interpreted the name clause in § 5 by referring to State common law about the time of the passage of the Act, citing an 1895 New York case, an 1898 Rhode Island case, a 1913 New Jersey case, and an English case. Of course, the Beckwith and American Steel Foundries cases involved only the question

---

[3] It should be noted that the 10-year clause in § 5 permits registration of some marks not considered trade-marks at common law, since they were not subject in the first instance to exclusive appropriation. Under the States' common law of unfair competition, such marks—descriptive words, geographical terms, and surnames—came to be provided some protection, but only after proof that a "secondary meaning" had been acquired by many years' exclusive use. Nims, op. cit., 103 et seq.; Derenberg, op.cit., 325 et seq. Congress provided in the 1905 Act that after exclusive use of such a mark during the 10 years next preceding 1905 the mark could be registered; through registration the mark becomes a "statutory trade-mark" and the registrant is entitled to invoke the protection of the Act, just as though the mark could have been a valid trade-mark at common law. Thaddeus Davids Co. v. Davids, supra; Schechter, op.cit., 70, n. 28.

670

of whether certain marks should be registered. But if registration makes the substantive questions of ownership and validity of a trade-mark questions of federal law, as we believe it does, then what the Supreme Court did in those two cases was indirectly to determine the scope of the federal substantive rights created by the statute, by the process of determining what marks were to be given and what marks refused the protection of the federal law through registration. Federal substantive rights in trade-marks, in other words, are defined by specific exclusion under the terms of the registerability section, as well as by interpretation of the terms "owner" and "trade-mark" in the damages and injunction sections.

■ The conclusion that Congress created substantive rights in trade-marks is not barred by the fact that § 23 of the Act of 1905 provides that "Nothing in this subdivision of this chapter [subchapter] shall prevent, lessen, impeach, or avoid any remedy at law or in equity which any party aggrieved by any wrongful use of any trade mark might have had if the provisions of said subdivision [subchapter] had not been passed." 33 Stat. 730, 15 U.S.C.A. § 103. We understand this section

to mean two things: (1) State common law is still controlling on the questions of trade-mark infringement and unfair competition if either party's mark is used only in intrastate commerce, or if both marks are unregistered or invalid under the Act. (2) State common law is still controlling even in interstate commerce on all questions of unfair competition not relating solely to the use of a trade-mark (third category). Since the goal of the Act is uniform treatment of trade-marks used in interstate commerce, § 23 may not be interpreted to destroy the Act. Texas & Pacific Ry. v. Abilene Cotton Oil Co., 204 U.S. 426, 446, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Adams Express Co. v. Croninger, 226 U.S. 491, 507, 33 S.Ct. 148, 57 L.Ed. 314, 44 L.R.A.,N.S., 257.

■ Congress has the constitutional power to legislate on the merits of trade-mark questions; it exercised that power in the Trade-Mark Act of 1905; and therefore the Erie doctrine is inapplicable to cases in the first category. Federal courts may continue to exercise their independent judgment in construing the Act, as they have always done.[4]

The Aunt Jemima case, supra, decided in 1917, first enunciated the "federal rule" or "modern rule" of unfair competition,[5]

[4] Although our case does not involve the Trade-Mark Act of 1920, 41 Stat. 533, 15 U.S.C.A. § 121 et seq., it follows that federal law also governs questions of infringement, defenses, and remedies arising under that Act, since it incorporates by reference the sections of the Act of 1905 dealing with these three topics. Act of 1920; § 6, 41 Stat. 535, 15 U.S.C.A. § 126. It has been said that registration under the 1920 Act "does not create any substantive rights in the registrant," Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 322, 59 S.Ct. 191, 195, 83 L.Ed. 195, and leaves the plaintiff standing "entirely upon * * * common-law rights, as though there had been no registration at all," Sleight Metallic Ink Co. v. Marks, D.C., 52 F.2d 664, 665. However, in the Nu-Enamel case, 305 U.S. page 333, 59 S.Ct. 191, 83 L.Ed. 195, the Supreme Court expressly refrained from deciding whether State law governed questions under the 1920 Act, and employed the statement quoted as a rule of statutory construction, seeking the definition of "owner" by referring to "the common law," i. e., the generally accepted State common law as of 1920. It is therefore our opinion that, just as with the 1905 Act, federal

law governs questions of validity under the 1920 Act because of the use of such terms as "right" and "owner" in the section on injunctions, 15 U.S.C.A. § 99, and "owner" in § 4 of the Act, 15 U.S.C.A. § 124. Questions of registerability arising under § 1 of the Act, 15 U.S.C.A. § 121, are of course also governed by federal law.

[5] Collins Co. v. Oliver Ames & Sons Corporation, C.C.1882, 18 F. 561, and Godillot v. American Grocery Co., C. C.1896, 71 F. 873, presaged the development of the "federal rule," but those cases involved additional elements of "passing off"; the mark in the Collins case was an origin and ownership trade-mark, not a word trade-mark (see Derenberg, op. cit., 28 et seq.), and the defendant in the Godillot case was carrying on his business in the exact location where plaintiff's goods had been sold previously under his mark. In Florence Manufacturing Co. v. Dowd & Co., supra (1910), although the court did not expressly state that the goods involved were in the same class (toilet brushes), it implied as much when it said that there would have been trade-mark infringement if the mark "Keep-clean" had not been descriptive.

which extended the protection given trade-marks and "secondary meaning" marks beyond that provided by the generally accepted State common law rules of 1905 and 1920, and so beyond the protection provided by the Trade-Mark Acts of 1905 and 1920. Under this rule, as developed in the Vogue, Yale, Waterman, and other cases in (a) of the second category, the use of a mark will be enjoined if it creates a likelihood of confusion as to source, despite the fact that it is used on goods of "different descriptive properties" which do not compete directly with plaintiff's goods. The basis of the rule is that fairness and equity demand that the owner of a trade-mark should be protected against gradual "whittling away" of the distinctiveness of the mark (and so of its advertising appeal), possibility of injury to his reputation through use of the mark on an inferior product, and forestalling of the "normal" expansion of his business into new fields. Cf. Landers, Frary & Clark v. Universal Cooler Corporation, 2 Cir., 85 F.2d 46, 48. The rule was, of course, developed on the assumption that there was a federal general common law. Therefore, the Erie doctrine requires that it no longer be applied as federal law.

■ It might be argued, in view of the fact that federal courts in 1905 were exercising independent judgment as to what "the common law" was, that § 23 of the Act was intended to preserve the resulting federal decisional law, which could develop two decades later to include the "federal rule." It is true that the phrase "at law or in equity" in that section is not expressly limited to State law, and so on its face might include federal law as well. But even if Congress had so intended, it could not have preserved in this way a federal general common law which never properly existed.

■ It might also be argued that Congress has "occupied the field" with respect to adequate protection of registered trade-marks used in interstate commerce, and so the Erie doctrine does not apply to the "federal rule" of unfair competition. But to say that Congress has "occupied the field," as in Postal Telegraph-Cable Co. v. Warren-Godwin Co., 251 U.S. 27, 31, 40 S.Ct. 69, 64 L.Ed. 118; Western Union Telegraph Co. v. Boegli, 251 U.S. 315, 316, 40 S.Ct. 167, 64 L.Ed. 281, and O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539, 541, is only another way of stating the rule that federal courts may go beyond mere interpretation of the express words used in an Act of Congress, to decide interstitial and cognate issues so as to effectuate the evident policy of the Act, either express or implied, as in Awotin v. Atlas Exchange Bank, 295 U.S. 209, 213, 214, 55 S.Ct. 674, 79 L.Ed. 1393; Board of Commissioners v. United States, 308 U.S. 343, 351-353, 354, 60 S.Ct. 285, 84 L.Ed. 313; Deitrick v. Greaney, 309 U.S. 190, 200, 60 S.Ct. 480, 84 L.Ed. 694; D'Oench, Duhme & Co. v. Federal Deposit Insurance Corporation, 315 U.S. 447, 459, 461, 62 S.Ct. 676, 86 L.Ed. 956; Prudence Corporation v. Geist, 316 U.S. 89, 95, 62 S.Ct. 978, 86 L.Ed. 1293; Sola Electric Co. v. Jefferson Electric Co., December 7, 1942, 63 S.Ct. 172, 87 L.Ed. ——. The policy of the Trade-Mark Acts is to provide certain limited protection to trade-marks registered under it and used in interstate commerce. § 16, 1905 Act, 15 U.S.C.A. § 96. The federal courts may not overrule this expression of Congressional intent by substituting their judgment as to what constitutes "adequate" protection of trade-marks.

It appears, however, that the "federal rule" has been taken over by many State courts as a rule of decision in their own courts. Calling our attention to this, plaintiff contends that under the Erie doctrine the question of whether an injunction should issue in cases in (a) of the second category is governed by the laws of the several States in which defendant has used its mark. As an example, plaintiff asserts that New York has adopted the "federal rule" (citing Philadelphia Storage Battery Co. v. Mindlin, 163 Misc. 52, 296 N.Y.S. 176) and contends that therefore defendant's use of the mark "Phill-Co" within the boundaries of that State, even though in interstate commerce, would be enjoined in the New York courts. Defendant contends, and the District Court held, that the Erie doctrine requires that cases in (a) of the second category be governed by the law of the State in which the District Court is sitting.

■ In our opinion, neither of these views is correct. The policy of a statute which Congress has enacted under its constitutional power to regulate interstate commerce may not be defeated or obstructed by State law, whether decisional, Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., supra, 204 U.S. page 440, 27 S.Ct. 350, 51 L.Ed. 553, 9 Ann.Cas. 1075; Second Em-

ployers' Liability Cases, supra, 223 U.S. pages 53-55, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44; Postal Telegraph-Cable Co. v. Warren-Godwin Co., supra, 251 U.S. page 30, 40 S.Ct. 69, 64 L.Ed. 118, or statutory, Southern Ry. Co. v. Reid, 222 U.S. 424, 442, 32 S.Ct. 140, 56 L.Ed. 257; Savage v. Jones, 225 U.S. 501, 533, 32 S.Ct. 715, 56 L.Ed. 1182; Chicago, Rock Island & Pacific Ry. v. Hardwick Elevator Co., 226 U.S. 426, 435, 33 S.Ct. 174, 57 L.Ed. 284, 46 L.R.A.,N.S., 203; McDermott v. Wisconsin, 228 U.S. 115, 132, 33 S.Ct. 431, 57 L.Ed. 754, 47 L.R.A.,N.S., 984, Ann.Cas.1915A, 39; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 223, 59 S.Ct. 206, 83 L.Ed. 126. Through the Trade-Mark Acts of 1905 and 1920 Congress has occupied that part of the field of unfair competition in interstate commerce having to do with "passing off" effected solely by the use of a trade-mark. The intention of Congress was to achieve uniformity within the area occupied. In so far as State law conflicts with this policy of the Trade-Mark Acts, it must yield to the superior federal law. Clause 2, Article VI, Constitution of the United States.[6] Federal law still governs cases in (a) of the second category, but now requires that no injunction issue.

Similarly, we do not believe that plaintiff's charge of misappropriation of a part of its subsidiary's[7] trade name can be sustained. The only protection accorded trade names by the Act of 1905 is that provided in § 5 (relating to registerability); there is no federal general common law to provide any additional protection; and plaintiff may not invoke State law to defeat the uniform treatment of trade-marks which is the goal of the Trade-Mark Acts. In other words, federal law still governs cases in (b) of the second category, but now requires that no injunction issue.

It goes without saying that plaintiff has no action for common law trade-mark infringement under State law. Registration of plaintiff's trade-mark rendered all questions concerning its use and protection in interstate commerce questions of federal law, and federal law is supreme.

We recognize that a 1905 restatement of State common law rules governing the use of trade-marks may not furnish an adequate answer to the trade-mark problems in 1943. In the absence of Congressional action, the only remedy for this situation would be expansion of the traditional interpretation given the phrase "substantially the same descriptive properties," which appears in § 16 of the Act. It would be difficult to choose words more ambiguous than this phrase; original interpretation might produce almost any test of similarity. The most workable test may well be simply whether the public is likely to assume that the goods of plaintiff and defendant emanate from the same source considering all the circumstances of the case—general nature of goods; number of persons using mark on other goods, i. e., is the mark "strong" and unusual (as "Kodak," "Aunt Jemima," etc.) or "weak" and common (as "Blue Ribbon," "Gold Medal," "Standard," "Champion," "Royal," etc.); does plaintiff sell a wide variety of products under its mark or only a limited number; the character of the market (see Pechcur Lozenge

---

[6] The reason this question was not raised prior to the Erie case was that under the "federal rule" the federal courts provided uniform protection for trade-marks which was more extensive than the protection usually allowed by State courts.

[7] The term "trade name" is not defined consistently in the cases, American Steel Foundries case, supra, 380; Nims, op. cit., 518. It has been used to indicate a mark not originally susceptible of exclusive appropriation which has acquired a "secondary meaning" and so will be protected as though it were a valid common law trade-mark. See Handler and Pickett, Trade-Marks and Trade Names—An Analysis and Synthesis (1930) 30 Col. L.Rev. 168; Handler, Unfair Competition (1936) 21 Iowa L.Rev. 175, 182. This cannot be the sense in which plaintiff has used the term, since "Philco" would not be a "secondary meaning" mark at common law, but a valid trade-mark. The term is also used to indicate a part or all of a firm name or corporate name, American Steel Foundries case, supra, 380; Derenberg, op.cit., 227–232, or abbreviation thereof, Nims, op.cit., 246. This is the sense in which the term is used throughout this opinion, and we assume it is the sense in which the term is used by the plaintiff.

The corporate name of plaintiff's marketing subsidiary contained the word "Philco" for several years before defendant appropriated and first used its trade-mark "Phill-Co," but plaintiff's corporate name did not contain the word until a few months after defendant's first use of its mark.

Co. v. National Candy Co., 3 Cir., 122 F.2d 318, 320, 321); and so forth.[8] But the established rule of construction, followed for almost forty years, is that Congress intended federal courts to enjoin the use of a similar trade-mark only on goods which competed fairly directly with the plaintiff's goods. Even those courts which recognized the inadequacy of this protection were apparently unwilling to expand the interpretation of the phrase in question, and consequently developed the "federal rule" under the federal general common law of unfair competition. Although the meaning of the phrase has been restricted in cases involving "weak" marks, Pabst Brewing Co. v. Decatur Brewing Co., 7 Cir., 284 F. 110 ("Blue Ribbon"); France Milling Co. v. Washburn-Crosby Co., 2 Cir., 7 F.2d 304 ("Gold Medal"); Arrow Distilleries v. Globe Brewing Co., 4 Cir., 117 F.2d 347 ("Arrow"), the holding that men's hats and caps have the same descriptive properties as men's suits and overcoats seems to represent the farthest the courts have gone in extending the meaning of the phrase when a "strong" mark was involved, Rosenberg Bros. Co. v. Elliott, 3 Cir., 7 F.2d 962, 966 ("Fashion Park"). We do not think this court may say that Congress desired the phrase to have a broader interpretation than it has been given.[9]

Applying federal law, the Master and the District Court concluded that plaintiff has a valid trade-mark under the Trade-Mark Act of 1905, but that the mark has not been infringed by the defendant's use of the mark "Phill-Co" because defendant's goods are not of "substantially the same descriptive properties" as those sold by plaintiff.

Defendant, asserting that "Philco" is merely the "simple and natural" abbreviation of Philadelphia Storage Battery Company (plaintiff's corporate name at the time it adopted its trade-mark in 1918), apparently seeks to invoke the rule that a geographical term will be protected against infringement only if it has acquired a "secondary meaning." But "Philco" is neither a geographical term nor an abbreviation suggesting a geographical term; it is a coined word unquestionably subject to exclusive appropriation under the 1905 common law of the States, and therefore under the Act of 1905. However, the record discloses and the District Court found that the defendant uses its mark only upon portable machines (electrically operated) for the degreasing of metal objects, upon parts and accessories for such machines, and upon portable stills for distillation of the solvent after it has been used in the machines; that the "plaintiff does not manufacture or sell any equipment competing with, similar to, or designed for the uses for which defendant's apparatus is solely useful"; and that there is thus no competition between plaintiff and defendant. The products upon which plaintiff uses its mark "Philco" are very numerous; those which are most comparable to defendant's goods are lubricators, mechanical refrigerators, air conditioning apparatus, radio and television apparatus, phonographs, and batteries. These are not similar enough to defendant's goods to bring this case within the statute, as construed in the cases.

Plaintiff contends that if defendant applied for registration of its mark in the Patent Office, it would be refused. We express no opinion on the question, since

---

[8] This is the test employed when the question is whether a mark should be registered. E-Z Waist Co. v. Reliance Manufacturing Co., 52 App.D.C. 291, 286 F. 461; Kassman & Kessner, Inc. v. Rosenberg Bros. Co., 56 App.D.C. 109, 10 F.2d 904; Yale Electric Corporation v. Robertson, supra; B. F. Goodrich Co. v. Hockmeyer, 40 F.2d 99, 101–103, 17 C.C.P.A.,Pat., 1068; California Packing Corporation v. Tillman & Bendel, 40 F.2d 108, 17 C.C.P.A.,Pat., 1048; In re Keller, Heumann & Thompson Co., 81 F.2d 399, 23 C.C.P.A.,Pat., 837. The difference in the language of § 5 and § 16 of the 1905 Act, 15 U.S.C.A. §§ 85, 96, may or may not be significant.

[9] Another phrase whose interpretation is a question of federal law is "unfair methods of competition" in § 5 of the Federal Trade Commission Act, 38 Stat. 719, 15 U.S.C.A. § 45. Federal Trade Commission v. R. F. Keppel & Bro., Inc., 291 U.S. 304, 309–312, 54 S.Ct. 423, 78 L.Ed. 814; National Candy Co. v. Federal Trade Commission, 7 Cir., 104 F.2d 999, 1005; Cf. Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 353, 354, 61 S.Ct. 580, 85 L.Ed. 881. There is strong evidence, chiefly in the legislative history of the bill, that Congress intended this phrase to have the broad interpretation it has had. There is no comparable evidence in the history of trade-mark legislation.

674

registration is only prima facie evidence of ownership. § 16, 1905 Act, 33 Stat. 728, 15 U.S.C.A. § 96.

*Third.* Since defendant's alleged wrong consisted only of using the mark "Phill-Co" upon its "Degreaser" and the other goods named above, this case presents only questions of the first and second categories. Questions in the third category, which would be governed by State law, are not involved here. It is thus not necessary to determine the particular States whose law would be applicable on such questions.

In so far as our opinions in the *Viobin* and *Rytex* cases are inconsistent with our opinion in this case, they are overruled.

For the reasons stated herein, the order of the District Court vacating the temporary restraining order is affirmed.