**TRIANGLE PUBLICATIONS, Inc., v. ROHRLICH et al.**

**ROSENBAUM et al. v. TRIANGLE PUBLICATIONS, Inc.**

District Court, S. D. New York.
May 21, 1947.

Lord, Day & Lord, by Woodson D. Scott, all of New York City, and Murdoch, Paxson, Kalish & Dilworth, by Richardson Dilworth and James A. Sutton, all of Philadelphia, Pa., for Triangle Publications.

Pennie, Edmonds, Morton & Barrows, by George E. Middleton, J. Edward Shinn, and William M. Pollack, all of New York City, for Rohrlich, Rosenbaum, et al.

SMITH, District Judge.

These two actions are consolidated for trial. It is agreed that they shall be treated as one case, with Triangle Publications, Inc., a Delaware corporation, (publisher of the magazine Seventeen), plaintiff, seeking injunctive relief (and damages) for infringement of statutory trademark and for common law unfair trading, and the defendants, citizens of New York, partners doing business as Miss Seventeen Foundations, seeking by counterclaim injunctive relief against the plaintiff for unlawfully interfering with, and threatening, the defendants' customers as trade-mark and copyright infringers.

### Discussion

Recovery may not be had under the statute for trade-mark infringement. It is true that many courts have made little or no distinction between the statutory action and the action for common law unfair com-

petition or unfair trade, and have gradually broadened both. It appears, however, that the Second Circuit still, although reluctantly, denies recovery under the statute unless both parties sell goods of the same descriptive properties, in a meaning still sufficiently narrow to preclude any possibility of so considering magazines and girdles. See Judge Learned Hand's discussion, Waterman Co. v. Gordon, 2 Cir., 1934, 72 F.2d 272, 274.

There remains to be decided the claim of common law unfair trading. As in the Waterman case, the cause of suit under the registered trade mark is substantial enough to support the jurisdiction of the court. We also have in the case at bar complete diversity as an added ground of jurisdiction. We need not be concerned in this case over the effect of Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487,[1] for there appears to be no significant difference between New York and federal law on unfair competition or unfair trading.

 There has been a gradual growth and broadening of the law of unfair trading. Direct "competition" is no longer required.[2] Plaintiff seeks still further broadening. The plaintiff's claim to protection against the use of the name of its magazine in the field of the defendants, in the sale of girdles, is, I take it, the farthest that the courts have yet been asked to extend the reach of their sanctions against unfair trade practices.

Magazines have in the past prevented the use of their names in the sale of articles dissimilar to magazines.[3] However, in the Vogue and Esquire cases, there appears to have been flagrant misuse of registered symbols, as well as of the name itself.

Is the name sufficiently distinctive here to be entitled to any protection? Is there a real likelihood of confusion from the defendant's use of it? Does the unfair use of it justify relief to the plaintiff? None of these questions is entirely free from doubt, but each must finally be resolved in favor of the plaintiff.

"Seventeen" is, of course, first of all a number. It has been used also, as in Tarkington's book, to represent the period of adolescence. Its use by the plaintiff has given it a more restricted meaning—a fashion and service magazine for teen-age girls. That meaning it acquired very quickly, aided by conditions such as the paper shortage and war-swollen advertising budgets. It is a meaning sufficiently distinct from the original meaning of the word to term it fanciful.

Magazines of the type of plaintiff's are an important part of the machinery of distribution of feminine apparel. The tie-in methods used to emphasize the connection between the magazine and articles mentioned therein bring the connection to the attention of a large portion of the potential customers in the age group to which the campaign is directed. The use of the name on an article of apparel within the field covered by the magazine and intended for the same age group is bound to create a probability of confusion as something assumed by that age group to have been advertised in or mentioned by the magazine. The tie-in between advertising medium and product leads the customer to associate the name of a magazine or a product with those products appearing in the medium. The likelihood of confusion is borne out by the evidence of the shoppers who were told by the salesgirls that there was a connection between plaintiff's magazine and defendants' products of similar name.

The use is unfair in the sense that defendants were taking a free ride on the efforts and expenditures of plaintiff. Defendants, although they deny it, must have known of a magazine so prominent in the

---

[1] For discussion of the effect of the Erie case in this field see Bulova Watch Co. v. Stolzberg, D.C.Mass., 1947, 69 F.Supp. 543; National Fruit Products v. Dwinell-Wright Co., D.C.Mass., 1942, 47 F.Supp. 499, affirmed 1 Cir., 1942, 140 F.2d 618; Philco Corporation v. Phillips Mfg. Co., 7 Cir., 1943, 133 F. 2d 663, 148 A.L.R. 125.

[2] Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 974; and Waterman v. Gordon, supra.

[3] Vogue Co. v. Thompson-Hudson Co., 6 Cir., 1924, 300 F. 509; Esquire, Inc., v. Esquire Bar, D.C.S.D.Fla., 1941, 37 F.Supp. 875.

76

apparel field. None of them appeared likely to be so lacking in diligence as to fail to learn of the advent of another good advertising medium in his field under then existing conditions, particularly when the magazine was known and used by the firm which two of defendants left to set up the new firm. Moreover, the explanation of the reason for the choice of the name for the new firm is little short of fantastic. It must be concluded that defendants appropriated the name because they saw some advantage in it, brought to their attention by plaintiff's use of it.

Defendants, by their pirating, obtained three advantages: Use of a fanciful name of appeal to the prospective customer age group, the expenditures by the plaintiff to emphasize the name's appeal, and the merchandizing advantages of the tie-up of product and magazine in the eyes of the public.

It may be that the belief of the public, that mention by a fashion magazine editorially or in advertising constitutes a hall mark of quality or style of product, is erroneous. But the results shown by the evidence demonstrate. that some such belief exists and that it has a substantial commercial value. The plaintiff can protect that value only if the law assists it with sanctions against the deception of the public by sellers of products similar to those it publicizes to its fashion readers.

Plaintiff has not been too careful about preserving that value, but apparently it has not yet suffered from that neglect, and if it has a right to the name its protection should not be removed from its own control by allowing unfair tactics by others to dilute its value.

It is not necessary for plaintiff to prove that actual confusion has already resulted; it is sufficient to show that deception would be the probable result of defendants' acts and the plaintiff has established this to the satisfaction of the Court.[4]

In the cosmetic field, plaintiff is preceded by another user of the name, who has not, however, so successfully established a distinctive meaning for it as appealing to the teen-age field. Even though there be some likelihood of confusion there, it is minimized by omitting the advertising tie-ups most likely to confuse, and it should not destroy the value plaintiff legitimately has built up in the name in the field of apparel.

Finally, although we must admit some misgivings as to any public benefit from the development of such advertising media as the plaintiff's magazine, we have so long based our law on the theory that trademarks and trade-names fulfill a useful purpose and are to be protected, that denial of relief here would be a complete reversal of direction which could not be justified in the absence of some evil on the part of plaintiff sufficient to forfeit protection.

Form of judgment for the plaintiff, in accordance with this opinion, may be submitted on notice.

---

[4] See Esso, Inc., v. Standard Oil Co., 8 Cir., 1938, 98 F.2d 1; United Drug Co. v. Obear-Nester, 8 Cir., 1940, 111 F. 2d 997; and Time, Inc., v. Viobin Corporation, D.C.E.D.Ill., 1941, 40 F.Supp. 249.